## INTERSTATE NORTHBOROUGH PARTNERSHIP, et al., Petitioners,

v.

## STATE of Texas, Respondent.

### No. 00–0070.

Supreme Court of Texas.

Argued Jan. 3, 2001.

Decided Oct. 25, 2001.

99.ask + D + 15146020 (opinion n rehearing).

H. Dixon Montague, Marie R. Yeates, Billy Coe Dyer, Sandra Garza Rodriguez, Vinson & Elkins, Houston, petitioners.

Randall M. Ward, John Cornyn, Andy Taylor, Locke, Liddell & Sapp, Linda Eads, Grady Click, Howard G. Baldwin, Deputy Atty. Gen. for Child Support., Susan Desmarais Bonnen, Walter C. Brocato, Jeffrey S. Boyd, Austin, for respondent.

Justice BAKER delivered the opinion of the Court.

We deny the State's motion for rehearing. We withdraw our opinion dated May 10, 2001, and substitute the following in its place.

This condemnation case presents two issues: (1) whether damages resulting from a commercial property's increased proximity to a roadway, with attendant loss of curb appeal, green space, and "buffer" zone, are special rather than community damages, and (2) whether evidence about unsafe access to the remainder property and the cost to cure is admissible to show special compensable damages. We conclude that, under the facts in this case, damages due to increased proximity to the roadway are special damages and thus compensable and that the trial court properly admitted evidence about these damages. Further, because unsafe access to remainder property and the cost to cure are special damages, we conclude that the trial court properly admitted evidence about these damages. We also conclude that the trial court properly refused the State's requested instruction that denial of access to former driveways resulting in longer travel or increased inconvenience is noncompensable. Finally, assuming without deciding that the trial court abused its discretion in excluding certain evidence the State offered, the error was harmless and did not cause the trial court to render an improper judgment. Accordingly, we reverse the court of appeals' judgment and render judgment for Interstate Northborough Partnership.

## I. BACKGROUND

In September 1991, the State brought a condemnation suit to acquire a part of Interstate Northborough Partnership's property located at the corner of Interstate Highway 45 and Meadowfern Drive in Houston. The State acquired 0.365 acres of INP's property as part of its project to widen I–45 and its frontage road. The State used the condemned land to construct new frontage road lanes. The State also erected two 6.5 feet tall retaining walls between INP's property and the frontage road near the northern and southern driveways to INP's land.

Before the condemnation, INP's property consisted of a 4.8 acre tract with an eight-story building, a two-story parking garage in the rear, and a surface parking area in the front. The building was 96 feet away from the frontage road and had a landscaped front yard that INP refers to as its "buffer" zone. After the condemnation, however, the building was only 22.5 feet from the frontage road. Also, because the condemnation left the building only 12 feet from the State's existing right-of-way, it violated Houston's building setback ordinance and a deed restriction. Moreover, the condemnation shortened the driveways to the surface parking lot and parking garage and caused INP to lose several surface-lot parking spaces. INP claims that its increased proximity to the frontage road, which resulted in the loss of curb appeal, green space, and "buffer" zone, significantly decreased the remainder property's market value. Further, INP alleges that the condemnation necessitated certain modifications to the remainder property to ensure safety to cars entering and leaving the property.

Before trial, the State moved to exclude evidence about diminished access to INP's remainder property, claiming that was a noncompensable injury because reasonable access to the remainder property still existed. The trial court denied the motion and determined that the condemnation caused a material and substantial impairment of access as a matter of law. The State also moved to exclude evidence about INP's increased proximity to the frontage road, arguing that this was a noncompensable injury because it flowed from the State's use of its existing right of way. The trial court also denied this motion.

At trial, the jury considered one issue: the difference in market value of INP's whole property immediately before the taking and the market value of the remainder property immediately after the taking. INP's expert testified that the condemnation damages totaled $1,949,845. This figure includes the decrease in the remainder property's market value, as well as renovation costs to the remainder that the condemnation necessitated. The jury awarded $1,000,000 in damages, and the trial court rendered judgment on the verdict.

The State appealed, arguing that the trial court's judgment is based on evidence of noncompensable damages. Specifically, the State asserted that the trial court erred by admitting evidence about INP's increased proximity to the frontage road and diminished access to the remainder property. The State also argued that the trial court erred by refusing the State's requested jury instruction that denial of access to former driveways that results in longer travel and increased inconvenience is not compensable.

The court of appeals reversed the trial court's judgment, holding that damages due to increased proximity to the frontage road are noncompensable community damages that INP shared in common with other landowners in the area. 8 S.W.3d 4, 13. It also held that the trial court erred by finding a material and substantial impairment of access to INP's remainder property. 8 S.W.3d at 10. However, the court of appeals concluded that INP's evidence at trial actually pertained to unsafe access to the remainder property and the cost to cure, rather than material and substantial impairment of access. 8 S.W.3d at 10. The court of appeals determined that this evidence reflects special damages, and thus it held that the trial court properly admitted this evidence and did not abuse its discretion by refusing to submit the

State's requested jury instruction. 8 S.W.3d at 10. Because the trial court's judgment was based partly on evidence of noncompensable damages, the court of appeals reversed and remanded the cause for a new trial. 8 S.W.3d at 14. The dissent argued that INP's increased-proximity damages are compensable because this was not an injury suffered in common with other properties. 8 S.W.3d at 14–15.

## II. APPLICABLE LAW

### A. CONDEMNATION DAMAGES

■ The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. ART. I, § 17. The Texas Property Code provides for condemnation damages:

> If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property.

TEX. PROP.CODE § 21.042(c). We calculate condemnation damages to remainder property when only part was taken for public use by ascertaining the difference between the market value of the remainder property immediately before the condemnation and the market value of the remainder property immediately after the condemnation, taking into consideration the nature of any improvements and the use of the land taken. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 197 (1936).

■ In *State v. Schmidt,* we recognized that not all condemnation damages are compensable. 867 S.W.2d 769 (Tex.1993). There, the State condemned strips of property as part of its project to convert a

roadway into a controlled-access highway. The landowners sought compensation for the remainder properties' decrease in market value due to traffic diversion, increased circuity of travel to the property, lessened visibility to passersby, and the inconvenience of construction activities. *Schmidt*, 867 S.W.2d at 770–71. The State argued that such damages are noncompensable under the Constitution and the Property Code. *Schmidt*, 867 S.W.2d at 773. For two distinct reasons, we agreed.

■ First, we considered the State's contention that the damages were noncompensable because they resulted from the State's new use of its existing right-of-way and property taken from other landowners. *Schmidt*, 867 S.W.2d at 777–78. We explained that section 21.042 of the Property Code allows recovery only for the effects of the State's use of the condemned land on the value of the remainder property. This rule exists, we further explained, because the effects of condemnation on the remainder property differ from the effects of the State's new use of its existing right-of-way or adjoining land. *Schmidt*, 867 S.W.2d at 777–78. And, we recognized that this rule, established by the United States Supreme Court in *Campbell v. United States*, 266 U.S. 368, 372, 45 S.Ct. 115, 69 L.Ed. 328 (1924), applies unless:

(1) the land taken from the condemnee landowner was indispensable to the ... project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the ... project.

*Schmidt*, 867 S.W.2d at 778 (quoting *United States v. 15.65 Acres of Land*, 689 F.2d 1329, 1332 (9th Cir.1982)).

Applying the *Campbell* rule, we concluded that the State's converting the roadway to a controlled-access highway, and not the State's using the condemned strips of land, caused the traffic diversion, circuity of travel, and impaired visibility damages. Because the exception did not apply, we held that the landowners could not recover the damages claimed. *Schmidt*, 867 S.W.2d at 779.

■ Second, we considered the State's contention that the damages claimed were noncompensable community damages under the Property Code:

In estimating injury or benefit under Subsection (c), the special commissioners shall consider an injury or benefit that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit that the property owner experiences in common with the general community.

Tex. Prop.Code § 21.042(d); *see Schmidt*, 867 S.W.2d at 779. We recognized that this section prohibits a court's considering community benefit or community injury when assessing damages. In determining whether damages are community or special, we stated that "[i]t is the nature of the injury rather than its location that is critical in determining whether it is community." *Schmidt*, 867 S.W.2d at 781. Applying this analysis, we concluded that the State's modifications to the highway caused the traffic diversion, inconvenience of access, impaired visibility, and disruption by construction activities. Because landowners in the area through which the highway ran shared the consequences of the State's highway changes, and because the landowners did not claim that the injury had a special or unique effect on their land, we held that the damages were non-

compensable community damages. *Schmidt*, 867 S.W.2d at 781.

Since *Schmidt*, we have applied the community-damages principle to hold that increased noise resulting from condemnation is community in nature and thus noncompensable. *Felts v. Harris County*, 915 S.W.2d 482, 485–86 (Tex. 1996). We have also held that modifications to the remainder or loss of improvements on the remainder due to condemnation are unlike the damages claimed in *Schmidt* and are compensable. *See State v. Centennial Mortgage Corp.*, 867 S.W.2d 783, 784 (Tex.1993) (holding that costs of replacing detention ponds and other improvements on the condemned strip of land and loss of parking spaces on the remainder are compensable damages). And we have held that impaired access to the remainder property is a special injury for which compensation exists if a trial court determines that a material and substantial impairment of access rights exists as a matter of law. *State v. Heal*, 917 S.W.2d 6, 11 (Tex.1996).

### B. STANDARD OF REVIEW

We have recognized that "[w]hether property has been 'damaged' under the constitution is a question of law" subject to de novo review without deference to a lower court's conclusion. *Heal*, 917 S.W.2d at 9. Thus, in condemnation cases, the trial court must determine if the damages claimed are compensable as a matter of law and then admit evidence accordingly. *Heal*, 917 S.W.2d at 9. When a condemnation-damages award is based on evidence of both compensable and noncompensable injuries, the harmed party is entitled to a new trial. *State v. Munday Enters.*, 868 S.W.2d 319, 321 (Tex.1993).

Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *Gee v. Liberty Mut. Fire Ins. Co.* 765 S.W.2d 394, 396 (Tex.1989). To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. TEX. R.APP. P. 61.1; *Alvarado*, 897 S.W.2d at 753; *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992). In determining if the excluded evidence probably resulted in the rendition of an improper judgment, we review the entire record. *McCraw*, 828 S.W.2d at 756; *Gee*, 765 S.W.2d at 396. Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Alvarado*, 897 S.W.2d at 753–54. And, ordinarily, this Court will not reverse a judgment because a trial court erroneously excluded evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Able*, 35 S.W.3d at 617–18; *Reina v. General Accident Fire & Life Assurance Corp.*, 611 S.W.2d 415, 417 (Tex.1981).

## III. ANALYSIS

### A. INCREASED PROXIMITY DAMAGES

#### 1. The Parties' Arguments

INP argues that its increased-proximity damages are solely attributable to the State's use of the condemned property and not the State's new use of its existing right-of-way. INP contends that the community-damages principle applies only if the landowner claims that the State's construction of a public work located apart from the condemned property caused the damages. Accordingly, INP argues that the court of appeals erroneously held that damages due to INP's increased proximity

to the frontage road are noncompensable community damages. Alternatively, INP argues that even if the community-damages principle applies, the evidence establishes that the increased-proximity damages are special and not community in nature and thus the trial court properly admitted evidence about this injury.

The State, on the other hand, argues that INP's increased-proximity damages are noncompensable because they result from the State's new use of its existing right-of-way and adjoining land to expand the highway, not just the State's use of the condemned land. Further, the State contends that the community-damages rule applies even if the landowner alleges that damages result solely from the State's use of the land taken. Here, the State argues, the court of appeals correctly held that the alleged damages are community in nature because they are no different than the noncompensable community damages in *Schmidt*. Accordingly, the State urges, the trial court erred in admitting evidence of INP's increased-proximity damages because these damages are noncompensable as a matter of law.

### 2. The State's New Use of its Existing Right of Way or Adjoining Land

■■■ We disagree with INP's assertion that the community-damages principle does not apply when the State's use of the land taken causes the damages claimed. In *Schmidt*, the community-damages principle and the State's new use of its existing right-of-way or adjoining land provided two distinct reasons for holding the damages claimed in that case noncompensable. *Schmidt*, 867 S.W.2d at 777–81. Accordingly, in the present case, we apply both tests to determine if INP's increased-proximity damages are compensable.

We first consider the State's argument that INP's increased-proximity damages are noncompensable because they are attributable to the State's new use of its existing right-of-way and the I–45 expansion project as a whole. Although, before the taking, the State already owned fifty of the ninety-six feet of the building's front yard, INP presented evidence showing the State used INP's condemned land to construct a new lane on the frontage road. This moved the frontage road closer to the building and, as the State concedes, resulted in INP losing various site improvements and landscaping.

■■■ INP seeks compensation for the decrease in its remainder property's market value due to the building's increased proximity to the frontage road. INP claims, and presented evidence at trial, that a significant reason for the building's appeal before the condemnation was its landscaped front yard and distance from the frontage road. INP also presented evidence that after the condemnation, tenant interest decreased due to the perception that the building is unsafely positioned near the frontage road. In *Schmidt*, the landowners claimed damages based on how the State's changes to the highway affected their remainder property rather than how the State's use of their condemned property affected their remainder property. *Schmidt*, 867 S.W.2d at 778–79. Therefore, we held the landowners could not recover damages. *Schmidt*, 867 S.W.2d at 777–78. Here, however, INP claims that the State's condemning the partial strip of land damaged INP's remainder property because the condemnation significantly changed the building's proximity to the frontage road to the point that the building no longer met the city setback ordinance or the deed restrictions. INP does not claim that its damages are due to the State's entire highway-expansion project. *See Schmidt*, 867 S.W.2d at 777–78 ("The effect of the State's condem-

nation on each tract in the present cases—that is, the taking of a small strip of property—is different from the effect of the State's change in Highway 183. The [Property Code] allows recovery only for the former."). We therefore conclude that the increased-proximity damages are attributable to the State's use of the land taken.

### 3. The Community–Damages Principle

Next, we consider the State's argument that INP's increased-proximity damages are noncompensable because they are community and not special in nature. The court of appeals determined that the increased-proximity damages are noncompensable community damages and thus the trial court erred in admitting evidence about this injury. In so holding, the court of appeals ascertained that other properties affected by the condemnation and widening of the frontage road suffered the same injury. 8 S.W.3d at 13. The court of appeals concluded that although INP claims the increased proximity is a severe injury, this "only renders the injury different in degree and not different in kind from the injuries suffered by neighboring landowners." 8 S.W.3d at 13. We disagree.

Whether the community-damages rule bars recovery of increased-proximity damages is an issue of first impression for this court. INP cites to several court of appeals condemnation cases awarding damages when the condemnation increased the property's proximity to the road. *See, e.g., State v. Sungrowth VI, Cal. Ltd.,* 713 S.W.2d 175, 178 (Tex.App.—Austin 1986, writ ref'd n.r.e.) (upholding part of damages award based on building's proximity to State's existing right-of-way in violation of city ordinance); *State v. Holland,* 453 S.W.2d 871, 874 (Tex.Civ.App.—Tyler 1970, no writ) (upholding damages award

partly based on evidence of dwelling's proximity to the highway and reduction in yard's size); *State v. Scarborough,* 383 S.W.2d 839, 841 (Tex.Civ.App.—Texarkana 1964, writ ref'd n.r.e.) (upholding damages award arising from reduction in a front yard's size and increased proximity to the highway). These cases, however, are pre-*Schmidt* cases and do not expressly apply the community-damages analysis we adopted in that case.

In *Schmidt,* we recognized that a landowner's injury is not community simply because several landowners suffer similar injuries due to the condemnation. *Schmidt,* 867 S.W.2d at 781. Rather, the nature of the injury and whether it affects the remainder in some special, unique way determines whether damages are community or special. *Schmidt,* 867 S.W.2d at 781. Here, the record establishes that the damages due to INP's increased proximity to the frontage road, resulting in loss of curb appeal, green space, and "buffer" zone, affected INP's remainder property in a special and unique way. And, importantly, the frontage road's relocation caused the building to violate the city setback ordinance and the property's deed restrictions.

Kevin Wyatt, a real-estate broker for INP and other property owners in the area before and after the condemnation, testified. He said that, before the taking, INP's building received an "A-" classification and was one of the most marketable buildings in the area. He explained that the building's "park-like" or "campus-type" setting due to its position away from the road significantly contributed to the building's appeal. According to Wyatt, the landscaped front yard protected the building from the frontage road and highway and provided a "peaceful working environment." He further said that, after the taking, INP's building lost its curb appeal

and thus tenant interest. He stated that the building's classification dropped to a "B-" or "C+" and he attributed this to the frontage road's proximity.

David Lewis, INP's expert retained to value INP's property before and after the condemnation, testified that his marketplace investigation revealed the importance of the building's position away from the road. He testified that the frontage road's proximity after the taking gave the perception that the building was not a safe place to work. He said his discussions with building management, tenants, and brokers verified that the increased proximity decreased the building's market value.

Further, contrary to the court of appeals' conclusion, there is evidence that other landowners in the area did not suffer the same injuries. The land north of INP was vacant, and the properties south of INP endured only minor changes. Additionally, there is no evidence that the frontage road's relocation impaired the perceived safety of any buildings on those properties or placed them in violation of city ordinances or deed restrictions. And, in any event, even if the condemnation did affect some neighboring landowners similarly, "injury to several landowners on the same street is not community injury simply because they all suffer alike." *Schmidt*, 867 S.W.2d at 781.

In sum, the difference in injury to INP's property is not one of degree, it is one of kind. INP demonstrated that the building's special design made its increased-proximity injury peculiar to its property and thus the increased-proximity damages are special not community. *See Schmidt*, 867 S.W.2d at 781. We therefore hold that the court of appeals erred in determining that the trial court improperly admitted evidence about these damages.

## B. DAMAGES FOR UNSAFE ACCESS AND THE COST TO CURE

The State argues that the trial court erred by finding that INP's remainder property suffered a material and substantial impairment of access as a matter of law because reasonable access to the property remained after the condemnation. *See Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex.1965) (holding that damages for diminished access are not compensable as long as suitable access remains); *DuPuy v. City of Waco*, 396 S.W.2d 103, 110 (Tex.1965) (holding that landowner was entitled to compensation because the condemnation destroyed all reasonable access to remainder property). The court of appeals agreed with the State but concluded that the trial court did not abuse its discretion in admitting Lewis' testimony because it was only about unsafe access to the remainder property and the cost to cure and not about whether access to the property was materially and substantially impaired. 8 S.W.3d at 10. The State contends this was error, alleging that Lewis' valuation of the remainder property before and after the taking is based partly on diminished-access evidence. The State also contends the court of appeals should have held that the trial court erred in refusing the State's requested jury instruction:

You are instructed that the denial of access to former driveways, if any, which may have resulted in a longer route of travel and increased inconvenience for purposes of ingress and egress to the subject property is not compensable as a matter of law and any depreciation of the remainder of the subject property due to such condition should not be included in your consideration of damages to the remainder.

In response, INP argues that the court of appeals correctly held that INP's evi-

dence was about unsafe access to the remainder property and the cost to cure. It argues that these damages are compensable, and, as a result, the trial court did not err in admitting this evidence.

■■■■■ We conclude that, as a matter of law, the trial court erred by finding a material and substantial impairment of access to INP's remainder property. After the condemnation, reasonable access to INP's property remained even though one of the five driveways to the property was closed for safety reasons. *See Heal,* 917 S.W.2d at 10 (recognizing no right to damages if landowner retains reasonable access to property after a condemnation). However, as the court of appeals correctly noted, INP's evidence was about unsafe access to the remainder property and the cost to cure rather than damages due to material and substantial impairment of access.

For example, INP's expert, Vernon Henry, a city-planning consultant, testified that the condemnation made two of the five driveways to INP's remainder property unsafe. According to Henry, the condemnation shortened the driveway's length to the front surface lot to less then one car length, leaving inadequate "stacking" room for cars entering and leaving the property from the frontage road. Henry further stated that he and his traffic consultant observed that the frontage road's traffic typically exceeded the speed limit, making it even more dangerous for cars to enter and leave by the shortened driveway. He testified that the retaining wall the State constructed contributed to the driveway's unsafe condition because it impaired a driver's view of oncoming traffic. As a result, Henry recommended closing this driveway, and INP followed his recommendation.

Henry also testified that the condemnation shortened the driveway leading to the parking garage. He explained that stacking in the shortened driveway caused unsafe conditions and difficult circulation and, therefore, he recommended renovating the parking garage to return the driveway to a safe length. Henry calculated the total cost to cure as $273,396.

Lewis testified that he determined INP suffered $1,949,845 in condemnation damages. He attributed $1,500,000 of this amount to the remainder property's decrease in market value. This amount, he explained, was based on the building's past and projected occupancy rates for the building's economic life compared to three other area buildings. According to Lewis, the remaining damages reflect INP's mitigation costs the condemnation necessitated, including Henry's recommendations to cure the unsafe driveways.

■■■■ The State concedes that INP may recover damages reflecting necessary modifications to the remainder property. In fact, the State's expert included his estimated cost to cure the unsafe driveway in his damages calculation. And, we have held that "[d]amages due to required modifications to the remainder, as a result of the condemnation, or damages due to a loss of improvements on the remainder because of the condemnation may, on a proper showing, be compensable." *Centennial Mortgage Corp.,* 867 S.W.2d at 784. INP's unsafe access and cost to cure evidence reflects specific damages. Therefore, we agree with the court of appeals and hold that the trial court did not err in admitting evidence about these damages.

■■■■■ Additionally, we reject the State's contention that the trial court erred by refusing to submit the State's requested jury instruction about denial of access to former driveways. A trial court has broad discretion in submitting jury instructions. *Plainsman Trading Co. v.*

*Crews,* 898 S.W.2d 786, 791 (Tex.1995). Because INP's evidence was about unsafe access and the cost to cure, not damages due to material and substantial impairment of access, the trial court did not abuse its discretion by refusing to submit the instruction.

## C. THE TRIAL COURT'S EVIDENTIARY RULINGS

### 1. The Parties' Arguments

The State argues that the trial court erred in excluding evidence about two buildings located near INP's property, the First Gibraltar and North Point Central buildings. The State claims that these buildings also underwent condemnation proceedings because of the highway's widening and, as a result, their proximity to the frontage road increased. The State contends that the excluded evidence about these buildings' alleged success after their condemnation demonstrates that the decrease in INP's remainder property's market value was not due to its increased proximity to the road. And the State argues that evidence about these buildings is not similar to, or cumulative of, the State's evidence about other buildings the trial court did admit.

Additionally, the State contends that the trial court erred in excluding evidence about water leakage and damage in INP's building before and after the condemnation. The State argues that this evidence shows that the building's condition, not the condemnation, caused INP's low occupancy rates. Further, the State argues that the trial court erred in excluding testimony about certain INP leases renewed in 1993 requiring that INP repair water-damaged areas.

In response, INP contends that, for several reasons, the trial court properly excluded evidence about the First Gibraltar and North Point Central buildings. First, INP argues that the evidence shows that First Gibraltar was involved in a condemnation proceeding when INP's trial occurred. INP contends that admitting evidence about this building would confuse and mislead the jury, because First Gibraltar's market value and condemnation-damages award issues were still in dispute in a pending trial. Second, INP claims that the evidence about North Point Central's building shows that the building sold at a discount because of the State's taking. Third, INP argues that evidence about both these buildings' values after condemnation is merely cumulative of the State's evidence that the trial court did admit. Specifically, the jury considered two studies involving nearly 50 office buildings that the State argued supported its appraiser's opinion on INP's condemnation damages. Fourth, INP contends that the evidence about both buildings had probative value that was substantially outweighed by confusion to the jury and undue delay. According to INP, if the trial court had admitted the evidence the parties essentially would have had to try, or retry, the disputes about those buildings' market value in addition to trying the dispute over the market value of INP's building.

Furthermore, INP argues that the trial court properly excluded testimony about the alleged water damage in its building. INP contends that the State's building consultant was unable to connect any of his observations or photographs about water damage to the valuation date, and thus, any testimony about such damage existing at that time involved pure speculation. Also, INP contends that the excluded testimony about its leases with water-damage-repair clauses was irrelevant and cumulative and was offered through a fact witness with no first-hand knowledge about those leases.

### 2. The First Gibraltar Building

The State's bill of exception included Lewis' testimony about First Gibraltar, which is the closest office building to INP's north. The State's condemnation caused First Gibraltar to move from 58 feet to 20 feet away from the frontage road. Also, Lewis explained that the building was empty before the condemnation, but after the condemnation, Compaq signed a seven year lease to occupy the entire building. Lewis stated that Compaq leased this building instead of another building nearby that stood "hundreds" of feet away from the frontage road.

On cross-examination during the bill, Lewis explained that while the State's condemnation proceeding was pending against it, First Gibraltar, which is an "A" classification building, sold for $3,000,000 less than its market value. Lewis stated that the buyer and seller both told him that the discounted sale was due to the condemnation. Further, Lewis testified that when the new owner leased the building to Compaq, the owner made several lease concessions. For example, the owner paid Compaq $3,000,000 from a "build-out allowance" for Compaq's use to improve the building's quality, including improvements to lessen the impact of its proximity to the frontage road. Compaq also received free rent for four months and "a flat lease with no punches" over a seven year term. At the bill's closing, the trial court sustained INP's objections under Texas Rules of Evidence 402 and 403, thereby excluding this evidence from trial. See TEX.R. EVID. 402 ("All relevant evidence is admissible, except as provided by Constitution, by these rules, or by other rules. ... Evidence which is not relevant is inadmissible."); TEX.R. EVID. 403 ("Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

### 3. The North Point Central Building

The State's bill of exception also offered Lewis' testimony about North Point Central, a high "A" classification building in the neighborhood that the State's 1984 condemnation moved closer to the frontage road. Lewis testified that since the condemnation, the building's occupancy rate rose from 74% in 1990 to 93% in 1996. He also stated that the building's rental rate rose from $10 to $12 per square foot. Lewis further testified that North Point Central sold in 1990 for a greater price than another building that the State's widening of I–45 had not affected.

Lewis further testified that he appraised the North Point Central building in the condemnation action against it, and he concluded that the effects of the State's condemnation caused it to sell for a discounted price in 1990. He additionally stated that North Point Central's rental rates were below the market price for similar buildings not located close to the frontage road. The trial court likewise excluded evidence about North Point Central's building, sustaining INP's objections under Rules 402 and 403.

### 4. Water Damage

In a bill of exception, the State additionally elicited testimony from a building consultant, Edgar Kelley, about the condition of INP's building when he inspected it for a prospective buyer in 1989. Kelley stated that at that time the building had some water leakage and damage, and he noted this in his report. Kelley testified that when he inspected the building again in 1995, the building still exhibited some water leakage and damage problems. But Kelley further stated that he did not know

if these conditions existed when the State condemned the property. And he admitted he could only speculate about whether the building had water damage right before or after the valuation date.

Moreover, the State offered testimony from Dennis Pilkington, who reviewed three 1993 leases renewing rental space in INP's building. He stated that these leases had a condition requiring that INP repair water damage in certain areas. The trial court also sustained INP's objections to Kelley's and Pilkington's testimony under Rules 402 and 403, excluding the evidence from trial.

### 5. Harmless Error

Assuming without deciding, for purposes of this case, that the trial court abused its discretion in excluding the State's evidence, such error was harmless. *See* TEX.R.APP. P. 61.1; *Alvarado,* 897 S.W.2d at 753; *McCraw,* 828 S.W.2d at 758. The record indicates that the North Point Central and First Gibraltar buildings received greater condemnation-damages awards than the jury awarded INP. Furthermore, the record shows that the excluded water-damage testimony was cumulative of other evidence the jury did consider. *See Able,* 35 S.W.3d at 617–18; *Reina,* 611 S.W.2d at 417. Indeed, INP did not contest at trial that its building suffered water damage problems, the jury heard other witnesses' testimony about the damage, and the jury viewed pictures showing the damage. Accordingly, the State has not demonstrated that the trial court's judgment turns on the excluded evidence. *See Able,* 35 S.W.3d at 617; *Alvarado,* 897 S.W.2d at 753–54.

### IV. CONCLUSION

We hold that, on the record before us, INP's increased-proximity damages are special damages and are therefore com-

pensable. Thus, the court of appeals erred in holding that the trial court improperly admitted evidence about these damages. Additionally, we agree with the court of appeals' holding that even though the trial court erred by determining that a material and substantial impairment of access to INP's remainder property existed as a matter of law, INP presented evidence only about unsafe access to the remainder property and the cost to cure. Therefore, the trial court properly admitted this evidence and did not abuse its discretion by refusing to instruct the jury that denial of access to former driveways resulting in longer travel or increased inconvenience was noncompensable. Also, assuming the trial court abused its discretion in excluding evidence about the First Gibraltar and North Point Central buildings and evidence about water damage in INP's building, the error was harmless. The record shows INP presented evidence that supports the jury's verdict of $1,000,000 in compensable damages. Accordingly, we reverse the court of appeals' judgment and render judgment for INP.