Affirmed and Memorandum Opinion filed December 2, 2004









Affirmed and Memorandum
Opinion filed December 2, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-00068-CV

_______________

 

 

IN THE INTEREST OF B.W.

 

__________________________________________________

 

On Appeal from the 328th District Court

Fort Bend County, Texas

Trial Court Cause No. 01-CV-118864

__________________________________________________

 

M E M O R A N D U M  
O P I N I O N

 

E.W.
appeals the termination of her parental rights with regard to her daughter,
B.W. (the Achild@)[1],
on numerous grounds.  We affirm.

                                                      Sufficiency
of the Evidence








E.W.=s fourth and fifth issues challenge
the legal and factual sufficiency of the evidence to support the trial court=s findings that: (1) she has a mental
or emotional illness that renders her unable to provide for the physical,
emotional, and mental needs of the child; (2) the illness or deficiency, in all
reasonable probability, will continue to render her unable to provide for the
child=s needs until her 18th
birthday; (3) the Department of Protective and Regulatory Services (the Adepartment@) has been the temporary or sole
managing conservator of the child for at least six months preceding the date of
the termination hearing;[2]
(4) the department has made reasonable efforts to return the child to E.W.; and
(5) termination was in the best interest of the child.  See Tex.
Fam. Code Ann. ' 161.003(a) (Vernon 2002).

                                                             Standard
of Review

The
conditions required for termination of a parent-child relationship must be
established by clear and convincing evidence. 
Tex. Fam. Code Ann. ' 161.001 (Vernon 2002); In re
J.F.C., 96 S.W.3d
256, 263 (Tex. 2002).  Clear and
convincing evidence is the measure or degree of proof that will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be proved.  Tex. Fam. Code Ann. ' 101.007 (Vernon 2002); J.F.C.,
96 S.W.3d at 264.

When
reviewing legal sufficiency where the underlying burden of proof is clear and
convincing evidence, we look at all of the evidence in the light most favorable
to the finding to determine whether the fact finder could have formed a firm
belief or conviction that the finding was true. 
J.F.C., 96 S.W.3d at 266. 
In doing so, we: (1) assume the fact finder resolved disputed fact
issues in favor of its finding if a reasonable fact finder could do so; (2)
disregard all evidence that a reasonable fact finder could have disbelieved or
found to have been incredible; but (3) do not disregard undisputed facts that
do not support the finding.  Id.  Based on this review, if no reasonable fact
finder could form a firm belief or conviction that the matter required to be
proven is true, then the evidence is legally insufficient.  Id.








In
conducting a factual sufficiency review of evidence under the clear and
convincing standard, we: (1) give due consideration to evidence the fact finder
could reasonably have found to be clear and convincing; and (2) consider
whether the disputed evidence is such that a reasonable fact finder could not
have resolved that evidence in favor of the finding.  Id. 
If, in light of the entire record, the disputed evidence that a
reasonable fact finder could not have resolved in favor of the finding is so
significant that a fact finder could not reasonably have formed a firm belief
or conviction, then the evidence is factually insufficient.  Id.

                                Illness
and Inability to Provide for the Child=s Needs

E.W.=s brief acknowledges that she has:
(1) a history of mental illness, including depression and bipolar disorder,
that will require lifelong treatment; (2) been hospitalized for it numerous
times; and (3) has attempted suicide four times and has had many other suicide
threats, including two since this case began. 
The record further reflects that despite knowing the importance, for
herself and her children, of staying on her medication for this condition, she
often neglected to do so, but repeatedly used marijuana and cocaine, both
during her pregnancy with the child and during the period of department
intervention.

Unable
to maintain a residence, E.W. has moved about among shelters, treatment centers,
and other locations.  In this regard,
E.W. testified that, just prior to and after the child=s birth, she lived in at least twenty
different places, including her car and with people whose names she did not
remember.  E.W. testified that at the
time she began her relationship with the man with whom she was living at the
time of trial, she was still married to the child=s father, but living with a different
boyfriend.

E.W.
was also not able to hold a job or provide for herself financially.  In 2001, she: (1) worked at a Wal-Mart store;
(2) worked as a live-in nanny for a family with two children; (3) cleaned two
houses; and (4) took a neighbor to medical appointments and ran errands for
her.  In 2002, she: (1) worked at a
McDonald=s restaurant from January to March,
then quit that job; (2) was unemployed until August; (3) worked two weeks for
ICM Telemarketing; (4) returned to McDonald=s until October; and (5) was again
unemployed through the time of trial.








The
evidence further reflects depressive periods in which E.W. slept all day,
getting up only to change the child=s diapers and feed her.  There were also instances in which E.W.
became angry with the child=s crying and would curse her, call her names, and jerk or
slap the child.  E.W. admitted that she
was afraid that she would hurt the child if she was not on her medication, yet
sometimes just voluntarily went off it. 
E.W. also admitted putting the child in a closet, strapped into a car
seat, when she became frustrated with her, and that it is not easy for her to
stay sober in stressful situations.  A
department caseworker testified that E.W. referred to the child as a Abitch@ and that E.W.=s behavior interfered with her
ability to visit with the child.  E.W.
stated numerous times that if the child were returned to her, she would leave
Texas and never talk to another therapist again.  One of the doctors from whom E.W. received
counseling testified that, in her opinion, E.W.=s parental rights should be
terminated because of her mental illness for which the doctor had seen no signs
of improvement.  This was the first time
in seventy-five such cases the doctor had recommended termination.  The guardian ad litem and department
caseworker also recommended termination. 
This evidence was legally sufficient to support the trial court=s mental illness and inability
findings.

In
challenging the factual sufficiency of the evidence to support termination on
this ground, E.W. essentially asserts that: (1) she is able to provide for the
needs of the child when she is treated; (2) she had sought, and was receiving,
appropriate care for her illness; and (3) she had provided adequate care for
the child during the seven months she had her. 
However, the portions of the record she cites to support these
assertions so completely fail to do so that it is not even apparent which
information therein she is even relying on. 
Even viewed in the light most favorable to E.W., the record reflects, at
most, sporadic periods in which the turmoil in E.W.=s life briefly subsided somewhat, but
in no way diminishes the fact or effects of her illness or her continuing
failure and inability to provide for the needs of the child.








                                                     Reasonable
Efforts to Return

Similarly,
the trial court=s finding that the department made reasonable efforts to
return the child to E.W. was based on the department=s service plan and its progress
reports on E.W.=s compliance with the court=s temporary orders and the service
plan.  In this regard, the actions to be
completed by E.W. included: (1) participating in supervised visitations; (2)
paying $10 per month child support; (3) releasing medical records; (4)
completing psychological and psychiatric evaluations; (5) attending counseling;
(6) undergoing a drug/alcohol assessment, following any recommendations from
this assessment, and submitting to random tests; and (7) establishing safe and
stable housing, stable employment, and appropriate child care prior to
reunification.  The department=s final progress report summarized
that, after thirteen months since the child=s removal from E.W.=s home, E.W. did not have stable
housing or employment, continued to use drugs despite knowing it could affect
reunification with the child, refused to comply with drug treatment programs,
and appeared mentally unstable.  This
evidence was legally sufficient to support the trial court=s finding of reasonable efforts by
the department to return the child.

In
challenging the factual sufficiency of this finding, E.W. asserts that the
visitations were inconvenient, and the department refused to allow E.W. to
enter a treatment facility where she could take the child with her.  However, even if true, these considerations
do not render the department=s efforts unreasonable. 
E.W. also contends that, even though she had established a home and
become regularly employed, the department did not visit her home or place of
employment.  On the contrary, however, as
outlined above, the record reflects no such lasting or stable employment or any
likelihood of it in the future.  In
addition, the most stable residence E.W. cited was sharing an apartment for
several months with a boyfriend with whom E.W. would not even allow the child=s guardian ad litem to speak.








Lastly,
E.W. argues that the department failed to consider an arrangement whereby a
relative would be permanent managing conservator of the child and E.W. would
maintain a possessory conservator relationship with her.  However, E.W.=s brief cites no portion of the
record reflecting that any such willing relative existed or that this
alternative was otherwise a possibility. 
Instead, E.W. testified that her support system consisted of: (1) the
man with whom she lived; (2) several aunts, none of whom lived in the immediate
area; (3) other single mothers with whom she had worked at McDonald=s; and (4) an ex-boyfriend=s girlfriend. There is, thus, no
basis to sustain E.W.=s challenge to the factual sufficiency of the evidence that
the department made reasonable efforts to return the child to her.

                                                                   Best
Interest

Factors
that a court should consider in determining the best interest of a child
include such things as: (1) the child=s emotional and physical needs now
and in the future; (2) the emotional and physical danger to the child now and
in the future; (3) the parental abilities of the individuals seeking custody;
(4) the plans for the child by the individuals seeking custody; (5) the stability
of the home or proposed placement; (6) the acts or omissions of the parent
which may indicate that the existing parent-child relationship is not proper;
and (7) any excuse for the acts or omissions of the parent.  Holley v. Adams, 544 S.W.2d 367, 371-72
(Tex. 1976); see also Tex. Fam.
Code Ann. ' 263.307 (Vernon 2002) (listing thirteen factors for
determining a parent=s willingness and ability to provide a safe environment).








The
evidence outlined in the preceding sections, supporting the termination of E.W.=s parental rights, is also probative
of the trial court=s finding that the termination is in the child=s best interest based on the
foregoing factors.  See In re C.H.,
89 S.W.3d 17, 28 (Tex. 2002).  In
addition, the department case worker testified that the child is confused and
reaching an age where she needs to know she will stay in one place; and that
putting her through further confusion will affect her emotionally and
developmentally.  Moreover, the child=s foster, and prospective adoptive,
parent testified that: (1) she and her husband had been married nearly three
years, both were raised in the area where they currently lived, and they had
many friends and family members nearby; (2) they both had stable jobs; (3) she
worked at a day care facility where she was receiving training, and was working
toward a bachelor=s degree in early childhood development; and (4) she and her
husband were licensed through the department and a home study had been
conducted on them.  This evidence is
legally sufficient to support the trial court=s best interest finding.

The
evidence not supporting the best interest finding includes: (1) the testimony
of the child=s foster mother and the department
caseworker that E.W. and the child shared an attachment; (2) the lack of
records that the child was ever not well fed or taken care of; and (3) the
attorney ad litem=s recommendation against termination.  However, despite this evidence, a fact-finder
could reasonably form a firm belief or conviction that termination was in the
child=s best interest.  Therefore, E.W.=s fourth and fifth issues fail to
demonstrate that the evidence was legally or factually insufficient to support
the trial court=s findings on termination and, accordingly, are overruled.[3]

                                                                     Jury
Trial

E.W.=s sixth issue argues that the trial
court violated her rights under the Fourteenth Amendment to the United States
Constitution by conducting a bench trial on the issue of termination without an
express waiver of her right to a trial by jury. 
E.W. also claims that because this case is more like a criminal case
than a civil case, the same requirement of an express waiver of jury trial that
applies to criminal cases should be applied here.








Under
the procedural rules governing a suit affecting a parent-child relationship, a
jury is not required, but may, with exceptions not applicable here, be
demanded.  Tex. Fam. Code Ann. ' 105.002(a) (Vernon Supp.
2004-05).  In addition, except as
otherwise provided in Title 5 of the Texas Family Code, proceedings in such
suits are as in civil cases generally.  Id.
' 105.003(a) (Vernon 2002).  In civil cases, a jury trial is required only
if a written request is filed at least thirty days before the date set for
trial.  See Tex. R. Civ. P. 216(a).  E.W. cites no legal authority that such rules
and procedure are unconstitutional. 
Because it is undisputed that her request for a jury trial was not
timely, E.W.=s sixth issue affords no basis for
relief and is overruled.

                                                Ineffective
Assistance of Counsel

E.W.=s seventh issue contends that her
trial counsel was ineffective because he failed to timely demand a jury
trial.  The statutory right to counsel in
parental-rights termination cases embodies the same right to effective
assistance of counsel as is applied in criminal cases.  In re M.S., 115 S.W.3d 534, 544-45 (Tex. 2003).  Under that standard, to establish ineffective
assistance, an appellant must show that: (1) counsel=s performance was deficient, i.e.,
it fell below an objective standard of reasonableness, and (2) the appellant
was prejudiced in that there is a reasonable probability that but for counsel=s errors, the result of the
proceeding would have been different.  Strickland v. Washington, 466 U.S. 668,
687 (1984).  A court must indulge, and a
defendant must overcome, a strong presumption that the challenged action might
be considered sound trial strategy under the circumstances.  Strickland, 466 U.S. at 689.

In
this case, E.W. claims that her counsel=s Aduty to take any reasonable steps
necessary to oppose the termination@ of her parental rights included
requesting a jury trial.  However, she
neither cites authority so providing, nor explains how the presumption of sound
trial strategy would be overcome with regard to a decision whether to present a
case to a judge or jury.  Nor does she
attempt to show a reasonable probability that the result of the proceeding
would have been different if it had been decided by a jury rather than a
judge.  Because E.W.=s seventh issue thus fails to
establish ineffective assistance of counsel, it is overruled.

                                                         Admission
of Evidence








E.W.=s eighth issue asserts that the trial
court erred in admitting business records and testimony based on them because
they contained inadmissible hearsay and unreliable expert opinions and were not
shown to be based on personal knowledge. 
E.W.=s ninth issue contends that the trial
court erred by excluding evidence that: (1) it would be a hardship on the child
if her adoptive parents divorced; (2) it could negatively impact the child if
E.W.=s parental rights were terminated and
the child later learned that E.W. was able to raise the child=s sibling; (3) the loss of contact
between the child and her sibling could not be made up; and (4) a drug habit is
hard to overcome and that many parents with drug problems are still fit to
raise children.

To
reverse a judgment based on a claimed error in admitting or excluding evidence,
a party must ordinarily show that the judgment turns on the evidence admitted
or excluded.  See Interstate
Northborough P=ship v. State, 66 S.W.3d 213, 220 (Tex. 2001).  In this case,
apart from challenging the rulings on the admissibility of this evidence, E.W.=s eighth and ninth issues each
summarily conclude that the admission of the evidence probably resulted in the
rendition of an incorrect judgment without providing any elaboration whatever
to support that assertion.  Because they
therefore afford no basis for relief, E.W.=s eighth and ninth issues are
overruled.  Accordingly, the judgment of
the trial court is affirmed.

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Memorandum Opinion filed December 2, 2004.

Panel consists of
Justices Fowler, Edelman, and Seymore.

 

 











[1]           The
child was born in November of 2000, and the termination order was entered in
December of 2002.





[2]           Although
E.W.=s fourth issue recites this element, the body of her
brief provides no support for any challenge to the evidence establishing the
department=s conservatorship of the child for the requisite time
period.  Therefore, this element of her
fourth issue presents nothing for our review.





[3]           Because
we conclude that the evidence supporting termination on the mental illness
ground is sufficient, we need not address E.W.=s
challenges to the evidence supporting the alternative grounds for termination
in her first through third issues.