The STATE of Texas, Appellant,

v.

DAWMAR PARTNERS, LTD., A Texas Limited Partnership, and Howard Wayne Gruetzner and Beverly Ann Gruetzner (a/k/a Beverly G. Shaw), Co–Independent Executors of the Estate of Martha Lillian Attaway Gruetzner (a/k/a Martha Lillian Attaway Gruetsner), Appellees.

No. 10–06–00136–CV.

Court of Appeals of Texas, Waco.

May 30, 2007.

Susan Desmarais Bonnen, Office of the Attorney General, Austin, for Appellant/Relator.

Philip E. McCleery, Sheehy, Lovelace & Mayfield, Waco, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## MEMORANDUM OPINION

TOM GRAY, Chief Justice.

The State of Texas brings this appeal from a judgment in a condemnation proceeding where the jury awarded the landowners $964,279.44 for the value of the property taken by the State and the damage to the remainder. Because the trial court did not err in admitting testimony of damages to the remainder and because it did not err in admitting testimony of value by Howard Gruetzner and Randy Reid, we affirm the trial court's judgment.

### BACKGROUND

The State condemned 12.89 acres of a 79.54 acre tract, owned by Dawmar Partners, Ltd. and Lillian Gruetzner, hereinafter referred to as Dawmar, to improve FM 1695, or Hewitt Drive, in Hewitt, Texas. After the taking, the remainder of the property would not have direct access to FM 1695, because the roadway was to be elevated. At a Special Commissioners' Hearing, Dawmar was awarded $267,000 for the taking. Dawmar filed objections to the award and the administrative proceeding was converted into a judicial proceeding. Before trial, Lillian Gruetzner passed away. A jury ultimately awarded Dawmar $964,279.44. The State appealed.

### DAMAGE TO REMAINDER

In its first issue, the State contends that the trial court erred in admitting evidence of damages due to an impairment of access that was not material and substantial.

Whether to admit or exclude evidence is a matter committed to the trial court's sound discretion. *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex.2001). To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. *Id.* Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Id.*

The State raised the issue of impairment of access in its motion in limine in a pretrial hearing. The trial court declined to rule on the motion until it heard the evidence. David Bolton, one of Dawmar's experts, had identified an area of 30 acres out of the 79.54 acres as an economic unit. He also testified that in his opinion, the highest and best use of the 30 acre economic unit was commercial and that was the basis on which he appraised the property including damage to the remainder. The State's experts testified that the highest and best use of the entire property was as residential property. Bolton also

opined that the economic unit was worth $1.00 per square foot, totaling $1,306,800. Therefore, he concluded, the 12.89 acres taken by the State was worth $561,488.[1]

At the time Bolton began to testify about the damage to the remainder, the State objected. The trial court overruled the objection. Bolton then testified that after the taking by the State, the highest and best use of the remainder, other than a separate tract of approximately 3 acres, of the economic unit changed. The reason for the change in the highest and best use was because the remainder no longer had direct access to the roadway and only had access through what had been the back of the property. Bolton testified that, as a result, the highest and best use of the remainder could only be as combined with the rest of the property, that is, residential property. Bolton estimated the value of the remaining 14 acres of the 30 acre economic unit to be $9,500 an acre. The highest and best use of a three acre portion of the economic unit had not changed and he continued to value it as commercial property worth $1 per square foot. Bolton concluded that the value of the land taken by the State plus the damage to the remainder of the economic unit totaled $1,039,524 ($561,488 part taken; $478,036 damages).

Randy Reid, a local real estate broker, also testified about the use and value of the property taken and the damage to the remainder. He also testified about an economic unit, however, he opined that the economic unit was only 19.21 acres. Over objection by the State, Reid opined that the taking had a major impact on the use of the remainder as commercial property. He believed that what made property more valuable and suitable for commercial use was visibility and good access. He said the 7 acres of the remainder no longer had the potential of being commercial property. Reid concluded that the value of the land taken and the damage was $703,778 ($561,662.64 part taken; $142,115.36 damages).

The State argues on appeal, as it did in the trial court, that Dawmar's expert testimony about damage to the remainder was inadmissible because that damage was the result of an impairment of access to the property that was not material and substantial and therefore non-compensable. *See City of Waco v. Texland Corp.,* 446 S.W.2d 1 (Tex.1969). The State does not argue that the damage to the remainder was non-compensable for any other reason. Thus, we limit our discussion to the specific argument raised by the State. However, this case was not about the impairment of access that was material and substantial. The denial of access to FM 1695 was a factor, but Dawmar's evidence concentrated on the change in use of the economic unit from commercial to residential. *See Interstate Northborough Partnership v. State,* 66 S.W.3d 213, 223–24 (Tex.2001) (where evidence was about unsafe access to the remainder rather than damages due to material and substantial impairment of access). The Texas Supreme Court has suggested that when the best use of the property is a disputed issue, a change in the best use due to the taking can create compensable damages to the remainder. *State v. Allen,* 870 S.W.2d 1, 2 (Tex.1994). The best use of the property in this action was disputed. Dawmar's experts testified that there was a change in the best use due to the taking and that the change

---

**1.** There were some minor differences in the number of square feet taken resulting in slight variances in the value taken when multiplied out by the value per foot but both of the landowner's experts agreed the value of the part taken was $1.00 per square foot. Bolton used .004 acres less than Reid.

damaged the value of the remainder. In light of the testimony, the trial court did not abuse its discretion in allowing Dawmar's experts to testify about the damage to the remainder. The State's first issue is overruled.

In its second issue, the State argues that there was no evidence or insufficient evidence to support the jury's answer to Question No. 2 awarding remainder damages of $402,616.80. The State relies solely on a favorable determination to its first issue as support for its second issue. Because we held the trial court did not abuse its discretion in allowing testimony as to the remainder damages, the State's second issue is overruled.

## TESTIMONY AS TO VALUE

In its third and fourth issues, the State contends that the trial court abused its discretion in admitting the testimony of two of Dawmar's witnesses, Howard Gruetzner and Randy Reid.

Howard Gruetzner was a co-executor of the estate of his mother, Lillian Gruetzner. Lillian was a co-owner with Dawmar of the property. He stated that Lillian's will gave the property to his sister and to him. At trial, Howard took the stand to give his opinion as to the fair market value of the property. The trial court overruled the State's objections to Howard's opinion testimony. On appeal, the State first argues that Howard could not testify as to the value of the property because he was not an owner of the property.

Section 37 of the Probate code provides in part:

> When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will, and all powers of appointment granted in such will, shall vest immediately in the devisees or legatees of such estate. . . .

TEX. PROB.CODE ANN. § 37 (Vernon 2003). The title to Lillian's share of the property immediately vested in Howard and his sister. See Kelley v. Marlin, 714 S.W.2d 303, 305–306 (Tex.1986); Casey v. Kelley, 185 S.W.2d 492 (Tex.App.-Fort Worth 1945, writ ref'd) ("whether property passes under a will or by descent and distribution, the title vests immediately upon the death of the owner; there is never a time when the title is not vested in somebody."). A right to the property devised is conferred on the devisee as effectively as if the transfer had been made in the form of a deed by the testator. Ferguson v. Ferguson, 111 S.W.3d 589, 596 (Tex.App.-Fort Worth 2003, pet. denied). Therefore, Howard was an owner of the property.

The State further argues that even if Howard was an owner, his testimony was inadmissible because he did not testify that he was familiar with the market value of his property. See Porras v. Craig, 675 S.W.2d 503 (Tex.1984) (the owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else.) However, the State did not present this argument to the trial court and has failed to preserve it for appeal. See TEX.R.APP. P. 33.1(a)(1).

Because Howard was an owner of the property, the trial court did not abuse its discretion in admitting his testimony. The State's third issue is overruled.

Randy Reid testified about the value of the property taken and the value of the remainder. He based his opinion of value on an economic unit of 19.21 acres. Reid, as did Bolton, believed that the economic unit was worth $1 a square foot as commercial property before the taking. Reid opined that the taking had a major impact on the remainder as commercial property. He believed that what made property attractive for commercial pur-

poses was visibility and good access. He said the remaining 7 acres of the economic unit no longer had the potential of being commercial property. Reid concluded that the value of the property taken and the damage was $703,778 ($561,662.64 part taken; $142,115.36 damages).

Prior to his testimony about the value of the property, the State objected to the testimony for two reasons: 1) Reid did not follow the Uniform Standards of Professional Appraisal Practice; and 2) Reid relied upon sales of lots in a subdivision to appraise un-subdivided property. Because Reid's report had not been offered into evidence, the trial court, without specifically ruling on the objection, allowed Reid to testify about the value of the property. After that portion of his testimony, the State "renewed" its objection. It mentioned the same two grounds as before, but then added that both grounds make Reid's opinion not relevant or reliable under the Rules of Evidence. The State then asked the court to strike the evidence that had been presented and instruct the jury to disregard Reid's testimony on value. The trial court overruled the objection.

On appeal, the State argues that based on *Daubert*[2] and its progeny, Reid's failure to follow the techniques and methodology generally accepted as valid in the appraisal community, and his violation of *regulations* governing his profession, in the development of his opinions, rendered Reid's opinions unreliable and thus, should have been excluded. Assuming that the objections were specific enough to preserve this particular issue, of which we have concerns, and that admission of the evidence was error, we find that the admission of Reid's testimony was harmless.

To reverse a judgment based on a claimed error in admitting or excluding evidence, a party must show that the error probably resulted in an improper judgment. *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In determining if the admitted evidence probably resulted in the rendition of an improper judgment, we review the entire record. *Id.*

The State contends Reid's testimony probably resulted in an improper judgment because the jury awarded the exact amount testified to by Reid for the part taken—$561,662.64. The jury did, in fact, award the exact amount testified to by Reid. However, Dawmar's other expert, David Bolton, testified to the same amount.[3] In reviewing the record, Reid's testimony was not any more damaging to the State than Bolton's so as to suggest that the jury based its decision on Reid's testimony rather than Bolton's. Further, the value of the part of the property acquired is the only value that Reid and Bolton agreed with each other—$1.00 per square foot. Their opinions differed as to the size of the economic unit and as to the damage to the remainder. Reid determined that value of the property taken and the damage to the remainder was $703,778 ($561,662.64 part taken; $142.115.36 damages). Bolton determined that the value of the property taken and the damage to the remainder was $1,039,524 ($561,488 part taken; $478,036 damages). The jury awarded Dawmar $964,279.44 ($561,662.64 part taken; $402,616.80 damages), a figure much closer to Bolton's amount than to Reid's.

The State also contends that the testimony probably resulted in an improper judgment because the jury awarded com-

2. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

3. *See* footnote 1.

pensation for damages that were non-compensable. As discussed in the State's first issue, we determined that the trial court did not abuse its discretion in allowing testimony of remainder damages because the testimony was not based on damages due to an impairment of access that was material and substantial as was argued by the State. The State gives no other reason why the damages sought would be non-compensable. Therefore, our disposition of the State's first issue negates this reason that Reid's testimony probably resulted in an improper judgment.

Based on a review of the entire record, we do not find that Reid's testimony resulted in the rendition of an improper judgment. The State's fourth issue is overruled.

### CONCLUSION

Having overruled the State's issues on appeal, the trial court's judgment is affirmed.