Vida Lee **CONNOR**, Appellant,

v.

Charles Curry **WRIGHT** and Grun & Grun, Appellees.

No. 04–86–00313–CV.

Court of Appeals of Texas, San Antonio.

July 29, 1987.

Roy D. Hunt, Alice, for appellant.

Mark Paisley, Alice, for appellees.

Before CADENA, C.J., and CANTU and REEVES, JJ.

REEVES, Justice.

Vida Lee Connor appeals the judgment of the trial court awarding Charles Curry Wright and Grun & Grun (Grun) attorney fees for legal work done by them on behalf of Connor, individually, and in her behalf as co-executrix of the estate of her husband, Edwin Earl Connor. She asserts three points of error: (1) failure to grant her motion for continuance, (2) failure of the attorneys to lay the proper predicate for introducing their business records, and (3) failure to find that a portion of the attorney fees was barred by the Statute of Frauds.

## THE MOTIONS FOR CONTINUANCE

Appellees filed a lawsuit for the fees on October 22, 1982. Between the time of filing and the entry of judgment on December 6, 1985, Connor filed three motions for continuance.

The first motion was filed July 3, 1984. It alleged that Connor was suffering from Iritis and Hypertensive Cardiovascular disease. The motion was supported by an affidavit from Connor's doctor, who opined she was not physically able to testify either by deposition or in court. On July 25, 1984, the court entered an order granting the continuance and ordered that the case be continued until Connor was released by her physician.

The case was again set for trial November 4, 1985. The second motion for continuance was filed October 23, 1985. It alleged that Connor was seriously ill with Iritis and Hypertensive Cardiovascular disease and thus unable to attend the trial. It

further averred that Connor suffered from weight loss and intermittent nose bleeds, both of which indicated further deterioration of her physical condition. The motion referred to the doctor's affidavit in the prior motion and attached a letter from the doctor updating her present condition. The letter stated that he saw Connor in his office August 29, 1985 and her condition was slightly worse than when he saw her in March. In his opinion, the doctor did not see how Connor could testify in any "legal procedure."

The motion further stated that Connor was the only witness with personal knowledge of the circumstances and transactions giving rise to the lawsuit, and that her testimony was required for trial and could not be obtained from any other source. The affidavit of Connor was attached, attesting to the truthfulness of the motion.

A supplemental affidavit was filed by Connor's attorney on October 30, 1985. It stated he had been advised by Connor's doctor that due to various medical complications she would be unable to testify. It also stated that numerous documents which were important to her defense had to be reviewed, and that due to Connor's illness, the attorney had not had the opportunity personally to meet with her for approximately two years. Therefore, the attorney could not adequately prepare for the trial set November 4, 1985.

On December 3, 1985, the trial court signed an order stating that on October 3, 1985, the motion for continuance was heard. It does not specifically grant or deny the motion but orders that the case be passed from the November 4 setting to December 6, 1985, when it would be heard on its merits.

On December 6, 1985, another motion for continuance was filed stating the same reasons for continuance given in prior motions. This motion was overruled and the case proceeded to trial.

1. The attorney representing Connor on appeal was not the attorney who represented her in the

## THE RIGHT TO A CONTINUANCE

Granting a motion for continuance is within the sound discretion of the trial court. *Jones v. John's Community Hospital*, 624 S.W.2d 330, 332 (Tex.App.—Waco 1981, no writ); *Green v. State*, 589 S.W.2d 160, 163 (Tex.Civ.App.—Tyler 1979, no writ). If the motion is predicated on the unavailability of a witness, it must be accompanied by an affidavit relating specific facts to which the witness will testify at the time of trial. TEX.R.CIV.P. 252. The motion should also contain some prognosis as to when or if the witness will testify. *John's Community Hospital*, 624 S.W.2d at 332.

■ The affidavit of the attorney representing Connor does not set forth the proposed testimony of the witness. He does state that, due to her illness, he had not had the opportunity to talk to his client for two years and that she was the principal witness to the transactions giving rise to the lawsuit.[1] This does not, however, relieve him from setting forth what the testimony of the potential witness would be, what diligence he used in trying to communicate with his witness during the two year period and his attempts, if any, to depose the witness. There is also no averment when the witness would be able to testify.

Point of error one is overruled.

## THE BUSINESS RECORDS

■ The court, over objection, admitted the business records of Wright and Grun relating to legal services rendered on behalf of Connor. Wright introduced the original accounts receivable and copies of the original statements submitted to Connor. Grun introduced copies of the statements submitted to Connor. Business records may be introduced in evidence if the offering party complies with TEX.R. EVID. 803(6). The rule, in pertinent part provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

trial court.

... (6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Connor objected that the records were inadmissible because there was no showing by either Wright or Grun that the items of legal work transcribed on the records were made at or near the time the event occurred and that the person making the entry had knowledge of the event.

Both Wright and Grun testified they used time sheets to keep track of the time they spent working for Connor. They testified that each time-sheet entry was always made at or near the time the event occurred. This information was then given to an employee who actually prepared the statement sent to Connor. Both attorneys conceded that the statements were compiled at some later date, perhaps a month or so after the event occurred. Wright testified that the accounts receivable introduced were also compiled at a later date, and that sometimes his secretary made entries on accounts receivable sheets based upon his time sheet.

To comply with the business records rule, it is not necessary that the attorneys' employees had personal knowledge of the information contained in the time sheet. Nor is it necessary that the accounts-receivable sheets or the statements be compiled at or near the time of legal work enumerated in the time sheet. *Clark v. Walker-Kurth Lumber Co.,* 689 S.W.2d 275, 281 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). It is for the trial judge to determine from all the evidence offered whether the personal knowledge required by Rule 803(6) is present. *LaFreniere v. Fitzgerald,* 669 S.W.2d 117, 119 (Tex.1984). The appellant has not shown an abuse of discretion by the trial court.

Point of error two is overruled.

## THE STATUTE OF FRAUDS

Connor contends that her oral contract with Wright and Grun for payment of attorney fees attributable to her in her capacity as co-executrix of her husband's estate is barred by the Statute of Frauds, TEX.BUS. & COM.CODE ANN. Sec. 26.01(a) and (b)(1). The statute provides in pertinent part:

§ 26.01. Promise or Agreement Must be In Writing

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

(1) a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate;

The oral contract of employment with Connor was negotiated by Wright. He testified that he was employed to represent her individually as an heir of the estate, and as co-executrix. This is confirmed in a letter written by Connor which states, "I no longer wish for either of you to represent me personally nor as co-executrix of the Estate of Edwin E. Connor."

Wright testified that he was informed that Connor was concerned the other co-executrix would take advantage of her, and that she wanted him to represent her personally. Wright further testified that he called to Connor's attention the lack of

**46**

cash assets in the estate, and she specifically informed him that he could look to her for payment. Certainly, the evidence is sufficient to establish that Connor personally obligated herself to pay Wright and Grun their fee.

We have not found any Texas cases construing this statute as it relates to debts of a decedent's estate occurring after the decedent's death. However, the Delaware Supreme Court, construing a similar statute, stated that it contemplated an undertaking to be bound for something due, or claimed prior to the decedent's death. *Smolka v. James T. Chandler & Son*, 41 Del. 255, 20 A.2d 131, 133 (1941). *See also* 37 C.J.S. *Frauds, Statute of* § 9 (1943). We think this is the correct view and hold that the Statute of Frauds, § 26.01(b)(1), does not apply to estate obligations incurred after the death of the decedent.

Moreover, Texas courts have held the representative personally responsible for necessary services contracted by the representative and performed for the estate. *McGloin's Ex'rs. v. Vanderlip*, 27 Tex. 366 (1864). Of course, the estate is primarily responsible. But it is assumed that the personal representative, in contracting with a third party, did so in the representative's individual capacity, and is liable for the obligation unless the parties have entered into a contract to the contrary. *Corpus Christi Bank & Trust Co. v. Cross*, 586 S.W.2d 664, 669 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

Appellant's points of error are overruled.

The judgment of the trial court is affirmed.