**Affirmed and Memorandum Opinion filed August 30, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01016-CV

---

**WOODY K. LESIKAR, AS TRUSTEE OF THE WOODROW K. LESIKAR FAMILY TRUST, AS TRUSTEE OF THE WOODY K. LESIKAR SPECIAL TRUST, AND AS EXECUTOR OF THE WOODROW V. LESIKAR ESTATE, Appellant**

**V.**

**CAROLYN ANN LESIKAR MOON, INDIVIDUALLY AND AS TRUSTEE OF THE CAROLYN ANN LESIKAR MOON SPECIAL TRUST, Appellee**

---

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 49786**

---

## MEMORANDUM OPINION

In this appeal, we consider challenges to the trial court's award of attorney's fees on remand in a dispute between siblings related to a family trust and their deceased father's estate. We affirm the trial court's judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Carolyn Ann Lesikar Moon, individually and as trustee of the Carolyn Ann Lesikar Moon Special Trust, filed suit in 2003 against her brother Woody K. Lesikar, individually and in his capacities as trustee for both the Woodrow V. Lesikar Family Trust ("Family Trust") and the Woody K. Lesikar Special Trust, and as executor of the estate of Woodrow V. Lesikar, their deceased father. Some of Moon's claims, involving the sale of shares of stock in West Houston Airport Corporation ("Airport Stock"), were severed and subsequently dismissed on summary judgment; Moon unsuccessfully appealed those claims.[1] Moon proceeded to trial on her remaining claims, and, at some point, Moon dismissed her tort claims against Lesikar individually. In a final judgment dated September 13, 2005 ("2005 Judgment"), the trial court specified which Trust assets were to be distributed to Lesikar's and Moon's special trusts and which assets were to remain in the Family Trust for distribution to other beneficiaries. The trial court also awarded Moon attorney's fees under the Declaratory Judgments Act and the Trust Code.

On Lesikar's appeal of the 2005 Judgment, this court reversed the portion of the judgment awarding Moon attorney's fees under the Declaratory Judgments Act and the Trust Code and remanded to the trial court for further proceedings consistent with this court's opinion.[2] On remand, the parties attempted to participate in discovery, resulting in a dispute between the parties and a subsequent mandamus proceeding as to the scope of the issues on remand.[3] The jury found $375,000 to be a reasonable and necessary fee for services rendered by Moon's attorney. The trial court determined that the amount of

---

[1] *See Moon v. Lesikar*, 230 S.W.3d 800 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

[2] *See Lesikar v. Moon*, 237 S.W.3d 361, 378–79 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

[3] *See In re Lesikar*, 285 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2009, original proceeding). This court stated that "the scope of the trial on remand is limited to the determination of the amount of attorneys' fees that (a) were reasonable and necessary to the initial preparation and trial of [Moon]'s claims under the Declaratory Judgments Act and the Texas Trust Code, and (b) it is equitable and just to award." *Id.* at 588.

2

reasonable and necessary attorney's fees found by the jury was equitable and just and should be awarded to Moon. The trial court denied Lesikar's motion for judgment notwithstanding the verdict and rendered judgment that Moon recover $375,000 in attorney's fees plus post-judgment interest. The trial court also denied Lesikar's motion for new trial.

## II. ISSUES AND ANALYSIS

### A. Is the evidence legally and factually sufficient to support the attorney's fees award?

In his eighth issue, Lesikar challenges the legal sufficiency of the evidence to support the award of attorney's fees.[4] In his ninth and tenth issues, Lesikar challenges the factual sufficiency of the evidence to support the award. A trial court's ruling to grant or deny attorney's fees under the Declaratory Judgments Act lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing it abused that discretion. *Lesikar v. Moon*, 237 S.W. 3d 361, 375 (Tex. App.– Houston [14th Dist.] 2007, pet. denied). The trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Lesikar*, 237 S.W.3d at 375. A court does not abuse its discretion if some evidence supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

We consider the legal and factual sufficiency of the evidence as relevant factors for our consideration in determining whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Lesikar*, 237 S.W.3d at 375. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary

---

[4] Because the eighth issue, if sustained, would result in reversal and a rendition of judgment in Lesikar's favor, we address this issue first.

evidence unless a reasonable fact finder could not. *Id*. at 827. The evidence is legally sufficient if it would enable fair minded people to reach the verdict under review. *See id*.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

Whether attorney's fees are reasonable and necessary are factual issues. *Lesikar*, 237 S.W.3d at 375. The following eight factors may be considered in determining the reasonableness and necessity of attorney's fees: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Anderson & Co v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Lesikar*, 237 S.W.3d at 376.

4

Attorney Bobbie Bayless testified that she and Moon entered into a contingent-fee contract in 2003 because Moon had no money or property to pay for hourly services. Under the agreement, Bayless was entitled to forty percent of the recovery as attorney's fees. Bayless has been licensed as an attorney in the State of Texas since 1980. Since 1986, she has been state-board certified in civil trial law and has been nationally certified since 1988 or 1989. At the time of trial, she had served as an expert witness for reasonableness of attorney's fees about twelve times for other cases. According to Bayless, the type of case at hand is the type of litigation covered by her board certification.

Bayless asked Brett Wagner, an attorney from a different law firm, to work with her on preparation of the case. Wagner has been licensed as an attorney in Texas since 1986. He is board certified in personal injury, and a good deal of his practice focuses on malpractice cases involving fiduciary issues. Wagner's firm brought in local counsel Vaughn O. Stewart, who had a contingent fee of ten percent of whatever amount was recovered. Bayless testified that a reasonable hourly fee for her services in the local area is $300, which she believed was "middle of the range" for fees for herself, Stewart, and Wagner. The upper range of hourly fees for a similar matter is $400.

Contrary to Lesikar's claim that Moon produced "no written billings or documentary evidence supporting her claims," the bulk of the evidence presented stemmed from Bayless's testimony and Plaintiff's Exhibit 1, a computer-generated compilation of Bayless's time spent on the case from November 26, 2002, to July 31, 2005. Bayless tallied the hours in Plaintiff's Exhibit 1, arriving at 1,900 hours spent on the case for her work alone and 2,100 hours with the other attorneys' or legal assistants' work. Bayless estimated that twenty percent of the 1,900 figure was spent on issues related to the claims regarding the Airport Stock. The record reflects that Wagner estimated he spent 800 hours on the case and that Stewart estimated he spent 120 hours on the case.

5

Before even filing suit, Bayless began work on the case, collecting documents to ascertain the contents of the Family Trust. Apparently, Moon's prior counsel was already in the midst of disagreements with other parties in obtaining records to the Family Trust. Bayless noted that information received by Moon's prior counsel was not consistent with other documentation related to the Family Trust. Bayless testified that she and Wagner spent about 100 hours investigating claims before filing suit. According to Bayless, the work involved prior to filing suit encompassed reviewing real estate records, reviewing prior probate proceedings and bankruptcy proceedings, reviewing depositions related to those prior proceedings, and reviewing of the estate tax return filed by Lesikar as executor of the estate of Woodrow K. Lesikar. Bayless testified that she spent 50 to 75 hours determining claims and remedies, and drafting and filing the pleadings. Bayless testified that it was complicated to frame the issues because she dealt with venue issues in two different counties. Ultimately, Moon's suit consisted of a petition for construction of the trust, a declaratory judgment, accounting, imposition of a constructive trust, appointment of a receiver, and injunctive relief. Moon's claims against Lesikar included breach of fiduciary duty, conversion, negligence, civil conspiracy, and tortious interference with inheritance.

After the suit was filed, the parties attempted to gather documents; they engaged in disputes over what documents should be produced, and there were multiple hearings on the disputed matters. Bayless spent 200 hours on discovery, which involved sending requests, gathering responses, responding to objections, and attending hearings. As part of discovery, Bayless obtained 40,000 pages of documents from Lesikar; Bayless spent 350 hours looking through the discovery materials. Bayless claimed to have worked on several motions for summary judgment to dispose of some issues, including the Airport Stock issues, spending 350 hours on summary-judgment motions on the construction of the Family Trust combined with the motion for summary judgment on the Airport Stock; those issues were dealt with at different times.

6

Bayless testified that she dealt with the special master for 50 to 75 hours and provided documentation to the special master, including nine to ten boxes of materials. Bayless worked on the master's report for 50 to 75 hours and spent 100 to 150 hours researching the report. In 2005, Bayless went to trial on the two remaining claims: the division of the Family Trust assets and attorney's fees. According to Bayless, trial was on an issue in the special master's report involving distribution of the Family Trust assets, such that without the report, trial would have encompassed more issues. Bayless, Wagner, and Stewart collectively spent 600 hours on trial preparations and the seven-day trial.

Bayless segregated her time on the case between the claims and the parties involved. In the 2005 litigation, there were multiple parties to the case, including nominal defendants. Moon was only entitled to recover attorney's fees on remand as to the initial preparation and trial of Moon's claims under the Declaratory Judgments Act and the Texas Trust Code. Bayless did not seek fees on the Airport Stock claims, as to which Bayless allocated twenty percent of her time spent on the case, nor did Bayless seek fees regarding Moon's request for a constructive trust or Moon's claims of conversion, civil conspiracy, negligence, and tortious interference with inheritance. Moon did not pursue these claims after summary judgment was granted. Likewise, no billed time for work on the Airport Stock claims is included in the estimates from either Wagner or Stewart. No action was taken on the tort claims alone; those claims were dismissed at some point and Moon did not seek judgment on the tort claims. According to Bayless, the timing of the dismissal of the tort claims is not significant in estimating the hours she spent on the case. Bayless's work on the injunctive relief paralleled and overlapped the receivership work.

Bayless testified that reasonable attorney's fees in the case would be $400,000 for about 1,300 hours. Bayless stated that she had "lopped off" a good portion of her hours to account for any duplication of effort by one of Moon's three attorneys, to account for

7

work done by any attorney or legal assistant at a rate of $300 an hour when a person at a lesser hourly rate could have done the same job, and to account for some portions of the case for which attorney's fees were not recoverable but may have been related to the work.

In arriving at her estimate, Bayless considered the time and labor involved and the novelty and difficulty of the legal issues. She described the case as being moderately complicated, highly contentious, and stressful. In assessing the skill required to perform the legal services for Moon, Bayless testified that in a highly contentious case, the work requires a higher skill level in dealing with procedural issues against other board-certified lawyers. Although the work consumed much of Bayless's time, the work did not preclude her acceptance of other clients. Bayless also considered the controversy in the suit and the results obtained, describing a substantial three-million-dollar estate with hundreds of thousands of dollars at stake. To the degree that Moon could have posed difficulties to the attorneys in the case, Bayless testified that any limitations posed by Moon were not big factors in terms of the time Bayless spent on the case. Bayless considered any such limitations as a potential factor affecting the reasonableness of the fees, but any limitations did not matter much in Bayless's time calculations. Bayless also considered the fact that she accepted a contingent-fee agreement as a factor in determining the reasonableness of her fees. According to Bayless, all time spent was reasonable and necessary to achieve the results in Moon's favor. Her professional relationship with Moon started in 2003 and has continued.

Opposing counsel had an opportunity to cross-examine Bayless regarding the fees. After hearing all the relevant evidence, the jury determined the request for attorney's fees was reasonable.

After carefully reviewing the record under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the jury's finding as to a reasonable and necessary attorney's fee. *See Oyster Creek Fin. Corp. v. Richwood*

8

*Invs., II, Inc.*, 176 S.W.3d 307, 321–22 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). We further conclude that the trial court did not abuse its discretion in concluding that awarding these fees to Moon was equitable and just. *See Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 891–92 (Tex. App.—Austin 2010, pet. denied). Accordingly, we overrule Lesikar's eighth, ninth, and tenth issues.

**B.    Did the trial court err in denying the motion for judgment notwithstanding the verdict?**

In Lesikar's seventh issue, he asserts that the trial court should have granted his motion for judgment notwithstanding the verdict because there is no evidence of any acts he committed as trustee of the special trust or as executor of his father's estate that could serve as a basis for the award of attorney's fees against him in these capacities.[5] We conclude that the issue of whether Lesikar is liable for attorney's fees in these two capacities was not within the scope of remand. *See In re Lesikar*, 285 S.W.3d at 588; *Lesikar*, 237 S.W.3d at 375–79. Therefore, the trial court did not err in rejecting this argument in Lesikar's motion for judgment notwithstanding the verdict. Accordingly, we overrule Lesikar's seventh issue.[6]

**C.    Did the trial court abuse its discretion in making certain discovery rulings?**

Under his first issue, Lesikar asserts that the trial court abused its discretion in making certain discovery rulings. A trial court's ruling on discovery is reviewed for an abuse of discretion. *Johnson v. Davis*, 178 S.W.3d 230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

---

[5] Because the seventh issue, if sustained, would result in reversal and a partial rendition of judgment, we address this issue before the remaining issues.

[6] Consequently, we need not and do not address Moon's first conditional cross-point.

### *Verification of Answers to Interrogatories*

First, Lesikar argues that the trial court abused its discretion by denying his request that Moon verify her answers to interrogatories. *See* Tex. R. Civ. P. 197.2(d). We presume, without deciding, that the trial court erred in failing to require Moon to verify her answers to interrogatories. After reviewing the record, we conclude that, even under this presumption, this error did not probably cause the rendition of an improper judgment and did not probably prevent Lesikar from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 628 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Thus, no harm resulted from any such error.

### *Denial of Motion to Compel Based on the Attorney-Client Privilege*

Lesikar contends the trial court abused its discretion by denying his motion to compel Moon to produce all emails, all case law reviewed in connection with the case, long-distance telephone bills and other telephone records, and other documents on which the billings of her attorneys were based. The trial court denied Lesikar's motion to compel production of these documents based upon Moon's assertion of the attorney-client privilege and the work-product doctrine. Moon's counsel also stated that they had no record of telephone bills.

A client has the privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purposes of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative, or the client's lawyer or a representative of the lawyer, to another lawyer or a representative of the other lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their

10

representatives representing the same client. *See* Tex. R. Evid. 503(b); *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 424 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding).

Lesikar relies upon the "offensive-use doctrine" and claims that "a party suing for [attorney's] fees waives attorney-client privilege and work-product immunity as to those disclosures which will establish an opponent's defense." Under the offensive-use doctrine, the attorney-client privilege may be waived when the privilege is used as a sword rather than a shield. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993). A reviewing court considers the following three factors to determine whether a party has waived privilege under the offensive-use doctrine: (1) the party asserting the privilege must seek affirmative relief; (2) the privileged information sought must go to the very heart of the affirmative relief sought and must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the claim asserted; and (3) disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence. *See id.* If any one of these requirements is lacking, the trial court must uphold the privilege. *See id.*

After reviewing the record, we conclude that the trial court did not abuse its discretion by impliedly finding that the privileged information sought did not go to the very heart of the affirmative relief sought or that this information, if believed by the fact finder, in all probability would not be outcome determinative of the claim asserted. *See Republic Ins. Co.*, 856 S.W.2d at 163; *Hooper v. Smallwood*, 270 S.W.3d 234, 244–45 (Tex. App.—Texarkana 2008, pet. denied). Accordingly, the trial court did not err in impliedly concluding that Moon did not waive privilege under the offensive-use doctrine.

### All Other Requested Discovery Denied

Lesikar also complains that the trial court denied him discovery bearing upon the issue of Moon's physical and mental condition, Moon's purported use of assumed names, Moon's alleged use of alcohol or drugs, Moon's frequency in changing addresses,

11

Moon's income-tax filing history, Moon's perceptual capacity, the ease of communications with Moon, and Moon's financial activities. Lesikar argues that the evidence was relevant to demonstrate that Moon's attorneys had difficulty communicating with her, causing them to expend time and resources to communicate with her, and that Moon was not credible.

Although Lesikar asserts the trial court erred in excluding or "blocking" this discovery and in deeming the evidence as not relevant, Lesikar does not cite to any part of the record in which he requested discovery in this regard or in which the trial court ruled that he was not entitled to any such discovery. Even liberally construing Lesikar's appellate brief, we conclude that Lesikar has waived this point through inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 231 n.2 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Having addressed all the complaints Lesikar asserts under the first issue, we overrule the first issue.

## D. Did the trial court abuse its discretion in admitting or excluding evidence?

Lesikar asserts in his second issue that the trial court abused its discretion in excluding certain evidence and in his third issue that the trial court erred in admitting certain evidence. A trial court's ruling to admit or exclude evidence is reviewed for an abuse of discretion. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Before the trial court's judgment may be reversed based upon the erroneous admission or exclusion of evidence, the appellate court must conclude that the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Interstate Northborough P'ship v. State*, 66 S.W.3d at 220. Typically, a trial court's erroneous evidentiary ruling will not be harmful unless the judgment turns on the evidence that was erroneously excluded or admitted. *See Interstate Northborough P'ship v. State*, 66 S.W.3d at 220. Ordinarily, this court will not reverse a judgment because a

12

trial court erroneously excluded or admitted evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *See id.*

Lesikar asserts that the trial court erred in admitting Plaintiff's Exhibit 1, a computer-generated, unredacted summary of legal billings and time entries for the case compiled by Bayless. The trial court overruled Lesikar's hearsay objection to this exhibit. Lesikar asserts that Moon did not establish this exhibit was a properly admissible business record compiled from contemporaneous entries pursuant to Texas Rule of Evidence 803(6), that qualified as an exception to the hearsay rule. *See* Tex. R. Evid. 803(6). This rule of evidence does not exclude "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* Bayless testified that she kept a record of the time she spent on Moon's case as part of her regular practice of law. If she was unable to log the time into a computer right away, she often recorded the time she spent on Moon's case on pieces of paper so that she could log the entries into a computer at a later time. According to Bayless, she entered the time billed, as written on the pieces of paper, into a computer within a week or so of the event, and never more than two weeks later. She threw those pieces of paper away after logging the entries in a computer. Business records of an attorney are admissible pursuant to Rule 803(6) to support attorney's fees. *Connor v. Wright*, 737 S.W.2d 42, 44 (Tex. App.—San Antonio 1987, no writ). The trial court did not abuse its discretion in overruling Lesikar's objection and admitting Plaintiff's Exhibit 1 into evidence. *See Connor*, 737 S.W.2d at 45.

13

Lesikar refers to the trial court's ruling that Lesikar could not introduce evidence, namely excerpts of Moon's deposition testimony relating to Moon's history of filing income-tax returns, "perceptual capacity," and "other issues previously discussed" in his first issue, which were deemed by the trial court as irrelevant and inadmissible. The trial court ruled that the evidence of medical and rehabilitative treatment and Moon's purported use of alcohol and drugs was not relevant in a trial for attorney's fees. The trial court offered to hear any evidence that Lesikar believed supported a determination as to whether the fees were equitable and just; the evidence did not go to the jury, which determined only what a reasonable and necessary fee was. Evidence that is not relevant is inadmissible. Tex. R. Evid. 402. Evidence is relevant if it tends to make the existence of a fact more or less probable than it would be without the evidence. Tex. R. Evid. 401. Even if it is relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. On this record, we conclude that the trial court did not abuse its discretion by determining that the complained-of evidence, regarding Moon's tax filings, "perceptual capacity," financial skills, purported medical treatments, or alleged use of alcohol and narcotics was not relevant to a determination of a reasonable and necessary attorney's fee. *See* Tex. R. Evid. 402.

Lesikar argues that, even if the evidence was not relevant, Moon opened the door to the admissibility of this evidence by bringing it up in Moon's opening statement and case-in-chief, and by presenting it to the jury. After reviewing all of the portions of the record cited by Lesikar, we conclude that the trial court did not abuse its discretion by determining that Moon did not "open the door" as to the evidence in question. *See Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 402 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (holding that party had not opened the door to otherwise irrelevant evidence).

14

Lesikar also asserts he was not allowed to introduce evidence of what his counsel had charged for the same legal work in the same case. Lesikar cites to the record of the hearing on the motions in limine in which the trial court ruled that Lesikar's attorney could not testify about the attorney's fees incurred in the case relating to disposition of the Airport Stock because the Airport Stock was not relevant to reasonable and necessary fees in the case under review. As reflected in the record, the trial court ruled that Lesikar could present evidence of the amount of time his counsel spent on the case. However, the record reflects that Lesikar withdrew the request to present evidence of what his attorneys charged and never offered that evidence. Because the record does not reflect that Lesikar offered the evidence or received an adverse ruling, Lesikar failed to preserve error in the trial court. *See* Tex. R. App. P. 33.1(a); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 350 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (providing that an appellant waived complaint by withdrawing a motion and failing to secure an adverse ruling on the complaint). Lesikar thus waived this complaint.

Lesikar further complains that he was not permitted to introduce Defense Exhibit 1, a color-coded version of Bayless's billings that the parties referred to as a "mark-up." The trial court ruled that Lesikar could use the exhibit as a demonstrative aid, and each juror had a copy of it while Lesikar's counsel testified about it. Even if we presume, without deciding, that the trial court erred in refusing to admit this exhibit into evidence, we conclude that any such error did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Wilson v. John Frantz Co.*, 723 S.W.2d 189, 194 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

In addition, Lesikar complains that the trial court admitted into evidence the special master's report, Plaintiff's Exhibit 4, over his objections. As reflected in the record, when Bayless testified about the contents of the report, Lesikar objected to the relevance of the special master's report, and the trial court ruled that Bayless could examine the document if she relied on it as an expert. When the report was offered into

evidence, Lesikar objected to relevance and the trial court ruled that the document was relevant because it revealed the complexity of the case. Lesikar also objected to the report as inadmissible hearsay; the trial court admitted the master report for the sole and limited purpose of determining the reasonableness and necessity of attorney's fees, but that it was not to be used to retry the original case. The parties went through the report line by line and Bayless testified that she reviewed the report and billed for her work related to the report.[7]

A special master's report is determinative of the facts reported in the case in which the master was appointed absent a proper objection by a party. *Lesikar*, 237 S.W.3d at 371; *Owens-Corning Fiberglass Corp. v. Caldwell*, 830 S.W.2d 622, 625 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding). The master's report was conclusive as to certain issues in the original suit and explained the issues tried in the original case, in which the attorney's fees were awarded. *See Owens-Corning Fiberglass Corp*, 830 S.W.2d at 625. The trial court admitted it for the limited purpose of showing the complexity of the original suit, but not to address the merits of the issues involved in that case. We conclude that the trial court did not abuse its discretion in admitting the special master's report over Lesikar's objections. Even if the trial court had erred, any error did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Interstate Northborough P'ship v. State*, 66 S.W.3d at 220.

Having addressed all of Lesikar's arguments regarding alleged error in the admission or exclusion of evidence, we overrule Lesikar's second and third issues.

---

[7] Lesikar complains on appeal that he had a right to present his defense to the jury without the uninfluenced findings of the master; this argument was not presented to the trial court for a ruling. Thus, Lesikar waived this complaint. Lesikar also asserts that a master's report is not admissible evidence on any issue in a jury trial, citing *San Jacinto Oil Co. v. Culberson*. *See* 101 S.W. 197, 199 (Tex. 1907). Lesikar failed to voice this complaint in the trial court and obtain an adverse ruling. Even if he had preserved error, this case is not on point. *See id.*

**E.    Is a new trial warranted based on allegedly improper jury argument or sidebar comments?**

In Lesikar's fourth issue, he asserts that Moon's counsel continually attacked Lesikar's counsel's integrity via sidebar comments.  Lesikar characterizes the comments as prejudicial, incurable, and necessitating a new trial.  Lesikar cites as objectionable the following closing argument by Moon's counsel, invoking God's name, to which Lesikar did not object:

> Now, for any trier-of-fact to believe that every single minute that Bobbie Bayless spent on working this case up on Carolyn Moon's behalf and presenting it to the Judge was not reasonably necessary means that you have to find that she does not speak the truth under oath.  And how in God's name can a jury believe that?

Lesikar also cites to three other places in the record showing what he contends are improper sidebar comments by Moon's counsel.  It is unclear what statements amounted to an allegedly improper comment in one instance, and, in the two other instances, Moon's counsel objected, addressing the trial judge, and referenced Lesikar's counsel as "misleading" the jury.  Following one instance, the trial court stated, "All right. Well, I have a lot of confidence in the intelligence of this jury.  So, I'm just going to let them sort it out."  Lesikar did not lodge an objection to any of the comments at the times they were made.

A party preserves error for allegedly improper jury argument or sidebar comments by timely objecting to the complained-of comments and obtaining an adverse ruling on the objection.  *See Living Ctrs. Of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008).  A party complaining of an improper argument must not have invited or provoked the improper argument.  *See id.*  Generally, retraction of the argument or an instruction from the trial court can cure probable harm, but in rare instances in which the argument is incurable, a party may complain on appeal about the argument even without a timely objection.  *Id.*  Reversal is proper upon a showing that "the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the

17

proper proceedings and evidence." *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979).

Lesikar did not assert an objection to any of these comments. Therefore, Lesikar must show that the comments constituted incurable jury argument. *See Jones v. Republic Waste Servs. of Tex., Ltd.*, 236 S.W.3d 390, 402 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When an argument is so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard, the prejudicial nature of the argument is so acute that the comment is incurable. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968). We examine all the circumstances surrounding the making of the statements to determine if the comment was so inflammatory that its perceived prejudicial effect could not have been cured by an instruction. *See Standard Fire Ins. Co.*, 584 S.W.2d at 839–40. Rarely will an improper argument so prejudicially influence the jury that error cannot be cured. *See Living Ctrs. Of Tex., Inc.*, 256 S.W.3d at 680.

Given the surrounding circumstances, the comments were curable. *See Jones*, 236 S.W.3d at 403. The four comments were brief in duration and occurred near the end of a four-day trial, after most of the evidence in the case had been admitted. On this record, we conclude the comments were not so inflammatory that their perceived prejudicial effect would have prevented the members of the jury from following their oaths with proper instructions from the trial judge. *See id.* at 404. To have preserved error, Lesikar should have timely objected to the comments and sought an appropriate instruction from the trial court. *See id.* at 403. Because we conclude the comments were curable with an instruction to disregard and because Lesikar failed to object, Lesikar has waived error on his complaint. *See Standard Fire Ins. Co.*, 584 S.W.2d at 839.

**F.      Did the trial court abuse its discretion by inappropriate actions and comments?**

Lesikar asserts in his fifth issue that the trial court committed a number of "violations" that deprived Lesikar of a fair trial. Specifically, Lesikar asserts that the trial judge (1) improperly left the bench during the jury trial; (2) improperly examined a

18

witness who was testifying before the jury; and (3) made remarks calculated to convey to the jury a negative opinion of Lesikar's case or evidence.

Before this court can reverse the trial court's judgment based upon these complaints, we must conclude Lesikar preserved error in the trial court by presenting these complaints to the trial court and obtaining an adverse ruling. *See* Tex. R. App. P. 33.1(a); *Tucker v. Thomas*, —S.W.3d—, —, No. 14-09-01081-CV, 2011 WL 6644710, at *15 (Tex. App.—Houston [14th Dist.] Dec. 20, 2011, no pet.) (en banc). A review of the appellate record shows that Lesikar did not voice any of these complaints in the trial court or obtain rulings from the trial court. Lesikar has not asserted that any of these alleged errors would constitute fundamental error, nor has Lesikar cited any case addressing this issue. The Supreme Court of Texas has concluded that, in the context of civil appeals, fundamental error is a narrow doctrine. *See In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003). None of the alleged errors fall within the narrow scope of the fundamental-error doctrine recognized by the Supreme Court of Texas. *See id.* Therefore, fundamental error does not apply to these complaints. *See id.* We conclude Lesikar has failed to preserve error as to these complaints. *See Tucker*, 2011 WL 6644710, at *15. We overrule Lesikar's fifth issue.[8]

## G.     Did the trial court abuse its discretion in denying an offset?

Lesikar asserts in his eleventh issue that the trial erred in failing to grant an offset against the attorney's fee award. Lesikar refers to the 2005 Judgment as crediting him with an offset of $126,473 against Moon's claim for $375,000 in attorney's fees. The right to an offset is an affirmative defense. *See Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). A party asserting an offset carries the burden of pleading offset and of proving facts necessary to support offset. *See id.* Although

---

[8] In Lesikar's sixth issue, he refers to the alleged errors in his first five issues as cumulative error, warranting reversal of the trial court's judgment. Inasmuch as we have overruled each of these issues already, we conclude that Lesikar's sixth issue adds nothing more for this court's consideration. We overrule Lesikar's sixth issue.

Lesikar faults the trial court for failing to allow him an offset, the record shows that Lesikar never requested an offset in his pleadings. Because the offset was not requested, the complaint is not preserved for appellate review. *See Coastal Shutters & Insulation, Inc. v. Derr*, 809 S.W.2d 916, 920 (Tex. App.—Houston [14th Dist.] 1991, no writ). To the degree we construe Lesikar to argue that his right to an offset exists as a matter of law by virtue of the 2005 Judgment, that judgment was a part of the fee award that was reversed on appeal. The record does not reflect that Lesikar has either pleaded or proven the facts necessary to support an offset. *See Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 704 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Accordingly, we overrule Lesikar's eleventh issue.[9]

Having overruled each of Lesikar's issues on appeal, we affirm the trial court's judgment.


/s/     Kem Thompson Frost
        Justice




Panel consists of Justices Frost, Brown, and Boyce.

---

[9] Because we overrule the eleventh issue, we need not and do not address Moon's second conditional cross-point.