ACCEPTED
12-15-00119-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/2/2015 8:48:50 PM
Pam Estes
CLERK

## NO. 12-15-00119-CV
## IN THE
## TWELFTH COURT OF APPEALS
## TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
12/2/2015 8:48:50 PM
PAM ESTES
Clerk

_____

**DEBRA DENT LEAL A/K/A
DEBBIE D. LEAL,    AND TANGO
TRANSPORT, INC., AND TANGO
TRANSPORT, LLC.**                                      **Appellants**

**vs.**

**JAMES JORDAN**
        **Appellee**

_____

**Appealed from the 115th District Court
Upshur County, Texas
Cause No. 588-12
Honorable Lauren Parish, Presiding Judge**

_____

**OPENING BRIEF OF APPELLANTS,
DEBRA DENT LEAL A/K/A DEBBIE D.
LEAL, AND TANGO TRANSPORT, INC.,
AND TANGO TRANSPORT, LLC.**

_____

Matthew L. Thigpen
Texas State Bar No. 24056425
Norman R. Ladd, III.
Texas State Bar No. 24041285
223 S. Bonner Ave.
Tyler, Texas 75702
(903) 705-7211
(903) 705-7221 (FAX)
**ATTORNEYS FOR APPELLANTS**

**ORAL ARGUMENT REQUESTED**

**IDENTITY OF PARTIES AND COUNSEL**

THE FOLLOWING IS A LIST OF ALL PARTIES TO THE TRIAL COURT'S ORDER APPEALED FROM, AND THE NAME AND ADDRESSES OF ALL TRIAL AND APPELLATE COUNSEL:

1. APPELLANTS-DEFENDANTS ARE DEBRA DENT LEAL A/K/A DEBBIE D. LEAL, AND TANGO TRANSPORT, INC., AND TANGO TRANSPORT, LLC.

2. TRIAL AND APPELLATE COUNSEL FOR APPELLANTS-DEFENDANTS DEBRA DENT LEAL A/K/A DEBBIE D. LEAL, AND TANGO TRANSPORT, INC., AND TANGO TRANSPORT, LLC. IS LADD & THIGPEN, PC, NORMAN R. LADD, III, AND MATTHEW L. THIGPEN, 223 S. BONNER AVE., TYLER, TEXAS 75702.

3. APPELLEE-PLAINTIFF IS JAMES JORDAN.

4. TRIAL AND APPELLATE COUNSEL FOR APPELLEE-PLAINTIFF, JAMES JORDAN IS PHENIX, PHENIX AND CRUMP, RUSTY PHENIX, 118 S. MAIN STREET, HENDERSON, TEXAS 75653.

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ......................................................... iii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES ................................................................................ v

TEXAS RULES OF EVIDENCE…………………………….…………….…vii

STATEMENT OF THE CASE .............................................................................1

ISSUES PRESENTED ........................................................................................4

STATEMENT OF FACTS ..................................................................................5

SUMMARY OF THE ARGUMENT ....................................................................7

ARGUMENT .......................................................................................................9

 Standard of Review ..........................................................................................9

Issue No. 1:      Did the trial court err and abuse its discretion by excluding relevant evidence of pre-existing injury to JORDAN?.............11

Sub-issue No. 1:   Was the evidence that the Trial Court excluded relevant?........11

Sub-issue No. 2:   Did the trial court err and abuse its discretion by in excluding the deposition testimony of Dr. Ritesh Prasad and Dr. Charles Gordon?....................................................................................11

Issue No. 2:    Did JORDAN Open the Door related to Pre-existing Injuries during his Direct Testimony……………………………………………….21

CONCLUSSION………………………………………………………….24

PRAYER ..................................................................................................25

CERTIFICATE OF SERVICE ...............................................................26

CERTIFICATE OF COMPLIANCE.......................................................27

# INDEX OF AUTHORITIES

PAGE

**Cases**

*Williams Distrib. Co., v. Franklin,* 898 S.W.2d 816, 817 (Tex.1995)………………7

*McGraw v. Maris*, 8282 S.W.2d 756, 757 (Tex.1992)…………………………..7

*Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex.2007).9, 22

*Certain Underwriters at Lloyd's, London v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 338 (Tex.App.–Beaumont 2013, pet. denied) ................................................9

*Caffe Ribs, Inc. v. State,* 328 S.W.3d 919, 927 (Tex.App.–Houston [14th Dist.] 2010, no pet.) (citing *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002))9, 10

*Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex.App.–Houston [14th Dist.] 2006, pet. denied) (op. on reh'g)................................................................................9

*Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 449 (Tex.App.–Houston [14th Dist.] 2002, no pet.) ................................................................................ 10, 21

*City of San Antonio v. Pollock,* 284 S.W.3d 809, 816–17 (Tex.2009) ...................10

*Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001) .............10

*Blackburn v. State,* 820 s.W.2d 824, 826 (Tex.App.—Fort Worth, 1991, pet. ref'd) ..........................................................................................................11

*Perez v. State*, 830 S.W.22d, 684, 687-88 (Tex.App.—Corpus Christi, 1992, no pet) ..........................................................................................................11

*Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App. 1985)………….……..12

*Castro v. Sebesta*, 808 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1991, no writ)……………………………………………………..…………...12

*Henderson v. State*, 906 S.W.2d 589, 597 (Tex.App.—El Paso, 1995, pet. ref'd)...12

*Montgomery v. State*, 810 S.W.2d 372, 376 (Tex.Crim.App., 1990)…………12, 14

*Layton v. State*, 280 S.W.3d 235, 240 (Tex.Crim.App., 2009)………………………13

*Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App., 2004)………………………14

*Menchaca v. State*, 901 S.W.2d 640, 648 (Tex.App.—El Paso, 1995, pet. ref'd)…14

*Russell Stover Candies, Inc. v. Elmore,* 58 S.W.3d 154, 158 (Tex.App.–Amarillo 2001, pet. denied)……………………………………………………….……14

*Transcontinental Ins. Co. v. Crump,* 330 S.W.3d 211, 218 (Tex.2010)……………14

*Baker v. Dalkon Shield Claimants Trust,* 156 F.3d 248, 252 (1st Cir.1998)……….15

*Brownsville Pediatric Ass'n v. Reyes,* 68 S.W.3d 184, 195 (Tex.App.–Corpus Christi 2002, no pet.)…………….....................................................15

*Cruz ex rel. Cruz v. Paso Del Norte Health Found.,* 44 S.W.3d 622, 632–33 (Tex.App.–El Paso 2001, pet. denied)………………………………………..15

*Harris v. Belue,* 974 S.W.2d 386, 393–94 (Tex.App.–Tyler 1998, pet. denied).….15

*Moore v. Bank Midwest, N.A.,* 39 S.W.3d 395, 402 (Tex.App.—Houston [1st Dist.] 2001, pet. denied)…………………………………………….………....22

*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex.2000)………...22

# TEXAS RULES OF EVIDENCE

Texas Rules of Evidence § 401…………………………………….…11, 12, 13

Texas Rules of Evidence § 402……………………….………………….10

Texas Rules of Evidence § 403…………………………………10, 15, 21

## STATEMENT OF THE CASE[1]

This is an appeal of a Final Judgment following a Jury Trial in an automobile accident case. Appellee James Jordan, ("JORDAN") filed suit against Appellants Debra Dent Leal a/k/a Debbie D. Leal, and Tango Transport, Inc., and Tango Transport, LLC., ("LEAL" and/or "TANGO") CR, P. 7-69. Factually, JORDAN and LEAL were involved in an automotive collision on October 1, 2010, involving two (2) tractor trailer rigs. CR, P. 7-69.

JORDAN asserted negligence against LEAL while acting within the course and scope of her employment for TANGO. CR, P. 7-69. Additionally, JORDAN asserts that LEAL operated her vehicle in a negligent manner by failing to keep a proper lookout, failing to maintain control of her vehicle, failing to control her speed, failing to keep an assured clear distance in violation of Sections 545.062(a) of the Texas Transportation Code, failing to comply with the Federal Motor Carrier Safety Regulations, and in committing other acts of negligence, all of which were a proximate cause of the occurrence in question. CR, P. 7-69.

Furthermore JORDAN alleged Respondeat Superior complaining of TANGO as LEAL was acting within the course and scope of her employment with TANGO.

[1] "CR" refers to the volume and page of the Clerk's Record. "RR" refers to the volume and page of the transcribed hearing in the Reporter's Record. "SR" refers to the volume and page of the transcribed hearing in the Reporter's Record entitled Hearing on Defendant's Objections, which was supplemented during this appeal.

1

Therefore TANGO is liable for such acts, omissions and conduct under the doctrine of Respondeat Superior. CR, P. 7-69.

On August 27, 2014, the Trial Court granted JORDAN'S Motion in Limine, Number 15, related to the 2002 accident. See Plaintiff's Motion in Limine, CR, P. 295; see also Order on Plaintiff's Motion in Limine, CR., P. 306.

On November 6, 2014, JORDAN filed the Notice of Deposition Excerpts and Objections Regarding Depositions of Dr. Charles Gordon, M.D., and Dr. Ritesh Prasad. CR., P. 741.

On November, 10, 2015, the Trial Court convened Vior Dire in the 115th Judicial District Court for Upshur County under Cause Number 588-12. Before Jury Selection, the Court heard contested issues that were before the Court including the issue of JORDAN's pre-existing conditions, and sought a ruling on the objections to the proposed deposition excerpts proffered by LEAL and TANGO. See CR. P. 741. JORDAN's counsel objected to the admission of the expert's testimony regarding JORDAN's pre-existing injuries. The Court overruled his objection, allowing testimony to be included at the time of Trial.

On the date of Trial, November 16, 2015, Counsel for JORDAN requested to re-open the issue of allowing JORDAN's pre-existing conditions coming in at Trial. The Judge allowed his argument and then ruled in his favor, overturning her own ruling from six (6) days prior. RR Volume 3, P. 11, LL. 17-24.

2

During testimony, JORDAN opened the door to the evidence related to his pre-existing injuries, and LEAL and TANGO requested that the Trial Court allow such evidence. This request was denied.

Following a conclusion of this trial, the Jury rendered its verdict, wherein certain damages were awarded to JORDAN, including $75,000.00 for past pain and suffering, and $35,000.00 for future pain and suffering. CR., P. 746.

On January 29, 2014, the Court signed the Final Judgment. CR., P. 763.

On February 25, 2015, LEAL and TANGO filed their Motion for New Trial, which the Trial Court never ruled upon, allowing such motion to be denied by operation of law. CR., P. 765.

On May 7, 2015, TANGO filed its Notice of Appeal. CR., P. 773.

TANGO asserts that had the Trial Court allowed introduction of the pre-existing injury, which would have been relevant to the damages and the proximate cause portions of this case, the Jury verdict would have been lower.

## ISSUES PRESENTED

**ISSUE No. 1:**      **Did the trial court err and abuse its discretion by excluding relevant evidence of pre-existing injury to JORDAN?**

**Sub-issue No. 1:**   **Was the evidence that the Trial Court excluded relevant?**

**Sub-issue No. 2:**   **Did the trial court err and abuse its discretion by in excluding the deposition testimony of Dr. Ritesh Prasad and Dr. Charles Gordon?**

**ISSUE No. 2:**      **Did JORDAN Open the Door related to Pre-existing Injuries during his Direct Testimony.**

4

## STATEMENT OF FACTS

On May 13, 2013, JORDAN was deposed by LEAL and TANGO, at which time he testified that he had been involved in an automobile accident in 2002, wherein he sustained injuries to his neck and back. See RR., Volume 8, entitled "Defendants' Trial Exhibit D-21". Such testimony also related to the treatment provided to these injuries, and the lengthy of time that JORDAN was not able to work while he healed from said injuries.

On March 17, 2014, JORDAN'S treating physician Dr. Charles Gordon was deposed by LEAL and TANGO, during which time the impact, if any, of the 2002 accident and injuries to JORDAN'S neck and back would be relevant to his opinions. Such testimony was later submitted as LEAL and TANGO'S deposition excerpts for the trial. JORDAN objected to such testimony as being irrelevant.

On August 14, 2014, JORDAN'S treating physician Dr. Ritesh Prasad was deposed by LEAL and TANGO, during which time similar questions related to the impact, if any, of the 2002 accident and injuries would be relevant to his opinions. Again, this testimony was submitted as LEAL and TANGO'S deposition excerpts for the trial, to which JORDAN objected as being irrelevant.

As outlined in detail in the following paragraphs, the Trial initially allowed such evidence to be admitted, but later excluded any evidence or testimony related

5

to the 2002 accident, the injuries sustained, and any testimony from the treating

physician related to the impact on their opinions.

## SUMMARY OF THE ARGUMENT

The court abused its discretion in excluding evidence of JORDAN'S previous accident and injury history, which was offered to show pre-existing injuries, because the evidence was admissible, was controlling on a material issue, and was not cumulative of other evidence. *See Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995); *McGraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). Specifically, during a pre-trial discussion regarding the expert testimony of Dr. Prasad and Dr. Gordon, the Court ordered that their testimony as to JORDAN'S previous back and neck injuries and potential alteration of their opinions was admitted.

At the commencement of the trial, the Court changed its ruling on this very issue, and excluded any testimony from all witnesses. This despite the fact that the Plaintiff, had testified, without objection, during depositions to such previous injuries. Furthermore, Dr. Prasad, a treating physician, testified that had he known of the previous injury, his opinions might have been different.

The exclusion of this evidence caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1). Simply put, the evidence before the Jury was that JORDAN had no previous injury history, which is counter to his sworn testimony.

This was also the issue during trial, wherein LEAL and TANGO sought to have the Court rule that the door had been opened when JORDAN testified that related to his work and injury history. The Trial Court denied such request that the door had been opened.

## ARGUMENT

### I. Standard of Review

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane,* 239 S.W.3d 231, 234 (Tex.2007); *Certain Underwriters at Lloyd's, London v. Chicago Bridge & Iron Co.,* 406 S.W.3d 326, 338 (Tex.App.–Beaumont 2013, pet. denied).

A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Caffe Ribs, Inc. v. State,* 328 S.W.3d 919, 927 (Tex.App.–Houston [14th Dist.] 2010, no pet.) (citing *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002)).

When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for the trial court's judgment. *Id.* Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Hooper v. Chittaluru,* 222 S.W.3d 103, 107 (Tex.App.–Houston [14th Dist.] 2006, pet. denied) (op. on reh'g)

Therefore, this Court is to examine all bases for upholding the trial court's decision that are suggested by the record or urged by the parties. *Id.*

Relevant evidence is generally admissible. Tex. R. Evid. 402. A trial court may exclude relevant evidence, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *see Strauss v. Continental Airlines, Inc*., 67 S.W.3d 428, 449 (Tex.App.–Houston [14th Dist.] 2002, no pet.).

In addition, a court may exclude an expert opinion when it is conclusory or the basis offered for it is unreliable. Tex. R. Evid. 702; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–17 (Tex.2009).

To obtain reversal of a judgment based on a claimed error in excluding evidence, a party must show that the trial court did in fact err and that the error probably resulted in rendition of an improper judgment. *Hooper*, 222 S.W.3d at 107. To determine whether excluded evidence probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. Caffe Ribs, Inc., 328 S.W.3d at 927 (*citing Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001)). To challenge a trial court's evidentiary ruling successfully, the complaining party must demonstrate that the judgment turns on the particular evidence that was excluded or admitted. *Hooper*, 222 S.W.3d at 107 (*citing Inter state Northborough P'Ship,* 66 S.W.3d at 220). A reviewing court ordinarily will not reverse a judgment because a trial court erroneously excluded evidence when the

excluded evidence is cumulative or not controlling on a material issue dispositive to the case. *Id.*

**ISSUE No. 1:** **Did the trial court err and abuse its discretion by excluding relevant evidence of pre-existing injury to JORDAN?**

**Sub-issue No. 1:** **Was the evidence that the Trial Court excluded relevant?**

**Sub-issue No. 2:** **Did the trial court err and abuse its discretion by in excluding the deposition testimony of Dr. Ritesh Prasad and Dr. Charles Gordon?**

Texas Rule of Evidence 401 defines "Relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In order for evidence to be relevant, it must meet a two-prong test under Rule 401. First, the proposition to be proved must be material, meaning it must support a proposition that is a matter in issue or is probative of a matter in the case. *Blackburn v. State*, 820 s.W.2d 824, 826 (Tex.App.—Fort Worth, 1991, pet. ref'd). The second prong of the test is that the offered evidence must be relevant, meaning it evidence must make the existence of the material fact "more probable or less probable than it would be without the evidence". *Perez v. State*, 830 S.W.22d, 684, 687-88 (Tex.App.—Corpus Christi, 1992, no pet).

11

Furthermore, Texas Rule of Evidence 401 does not require that the fact to be proved be in dispute, *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim.App. 1985). While a court might reject evidence on a particular fact already resolved for the purposes of the lawsuit by judicial notice, stipulation or failure of the opponent to deny the fact by sworn pleading, the Court should more properly reject such evidence as "unfairly prejudicial" or a "waste of time" under Rule 403, rather than rejecting it as immaterial under Rule 401. *Castro v. Sebesta*, 808 S.W.2d 189, 191 (Tex.App.—Houston [1st Dist.] 1991, no writ).

Rule 401 maintains that the theories of the parties in either prosecution or defending the claim determine the material issues in each individual case. *Henderson v. State*, 906 S.W.2d 589, 597 (Tex.App.—El Paso, 1995, pet. ref'd). In this case, JORDAN sought recovery for physical injuries that he sustained in the accident in question, which included a L5-S1 fusion with an anterior lumbar interbody fusion of L5-L1. In response, TANGO and LEAL argued that a prior accident caused identical injuries to JORDAN.

The second prong of Rule 401 relates to the relevance of the evidence being offered in trial. As stated by the Texas Court of Criminal Appeals, the "appropriate test for relevancy is whether 'a reasonable person, with some experience in the everyday work,' would believe that a particular piece of evidence might be helpful in determining the truth or falsity of any material fact." *Montgomery v. State*, 810

12

S.W.2d 372, 376 (Tex.Crim.App., 1990). Thus, the Court is to look to the purpose for offering the evidence, the material fact to be proved, and whether there is a direct or logical connection between the offered evidence and the proposition to be proved. *Layton v. State*, 280 S.W.3d 235, 240 (Tex.Crim.App., 2009).

In the instant matter, LEAL and TANGO sought in include sworn testimony from the Plaintiff, JORDAN, related to previous physical injuries that were from the (1) same form of employment, (2) similar physical injuries including the same location on the body, and (3) the course of treatment and recovery. As an affirmative defense, LEAL and TANGO argued a pre-existing condition related to the damages in this matter, thus any evidence of a prior accident with the same physical injury would be a direct logical connection to such proposition. See TANGO'S First Amended Answer, CR., P. 79.

Furthermore, a reasonable person would be able to believe that sworn testimony from JORDAN related to his previous back injuries might be helpful in determining if the extreme course of medical treatment in the instant case were all related to the accident in question, or an exasperation of a pre-existing Defendants' Trial Exhibit "D-21", RR., Volume 8, D-21. Thus, under the prong test for Rule 401 of the Texas Rules of Evidence, JORDAN'S testimony related to pre-existing injuries was relevant as a matter of law, and the Court erred in ruling that such evidence would be not admissible at trial.

13

It should be noted that relevancy is not a sliding scale, but is a "yes" or "no" proposition, as evidence must provide only a "small nudge toward proving or disproving some fact of consequence. *Stewart v. State*, 129 s.W.3d 93, 96 (Tex.Crim.App., 2004); *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex.Crim.App.1990). In fact, the proposition at issue does not event need to be the most likely inference from the evidence. *Menchaca v. State*, 901 S.W.2d 640, 648 (Tex.App.—El Paso, 1995, pet. ref'd).

With regard to evidence of pre-existing injury, there is a general principle that a defendant may cross-examine a plaintiff regarding previous injuries, claims, and actions when they are relevant to show that the plaintiff's present physical condition is not the result of the injury presently sued for, but was caused in whole or in part by an earlier or subsequent injury or a pre-existing condition. *Russell Stover Candies, Inc. v. Elmore,* 58 S.W.3d 154, 158 (Tex.App.–Amarillo 2001, pet. denied).

In addition, a defendant may introduce evidence—typically an expert opinion—regarding another "plausible cause" of the plaintiff's injury, and the plaintiff must then exclude that cause with reasonable certainty. *Transcontinental Ins. Co. v. Crump,* 330 S.W.3d 211, 218 (Tex.2010).

The be fair, the general principles "of alternative causation [are] not a free ticket to admission of evidence," which must still meet admissibility requirements

14

including relevance, reliability of expert testimony under Rule 702, and the Rule 403 balancing test. *Baker v. Dalkon Shield Claimants Trust,* 156 F.3d 248, 252 (1st Cir.1998).

Under these requirements, a defendant must provide a competent factual basis showing that an alternative cause is a plausible one before evidence of that cause will be presented to the jury. *See Brownsville Pediatric Ass'n v. Reyes,* 68 S.W.3d 184, 195 (Tex.App.–Corpus Christi 2002, no pet.) (holding reliability requirement applies equally to defense expert witness testifying about alternative causes of plaintiff's injury); *Cruz ex rel. Cruz v. Paso Del Norte Health Found.,* 44 S.W.3d 622, 632–33 (Tex.App.–El Paso 2001, pet. denied) (concluding that although defensive theories regarding alternative causes need not be established "within reasonable medical probability," there must be "factual support in the record justifying [their] application"); *Harris v. Belue,* 974 S.W.2d 386, 393–94 (Tex.App.–Tyler 1998, pet. denied) ("Without factual support in the record justifying the application of these [alternate] theories [of causation], they rise to little more than conjecture....).

In this case, the trial court initially granted LEAL and TANGO the ability to cross examine JORDAN related to the pre-existing injury that he sustained in 2002. However, a week later when opening statements were commenced, JORDAN re-urged its relevance argument as to any evidence of a pre-existing injury, including

15

testimony from JORDAN'S expert witnesses, Dr. Prasad and Dr. Gordon, related to a lack of knowledge of such pre-existing injury and the impact on their medical expert opinion as to causation.

On November 10, 2014, the Court heard oral argument as to the deposition excerpts of Dr. Prasad and Dr. Gordon. During that hearing, JORDAN' argued that any testimony related to the 2002 accident of JORDAN was not relevant, including the deposition excerpts offered by TANGO related to Dr. Gordon. SR, P. 5, L. 6-22.

After a brief argument, the Trial Court inquired as to whether JORDAN had testified that "he was in an accident and had neck and shoulder problems or whatever you said?" to which all parties answered in the affirmative. SR, P. 7, L. 15-20. The Trial Court then ruled that "For clarity I'm overruling Plaintiff's objection. Defendant can offer that." SR., P. 8, L. 12-13

As to the deposition excerpts of Dr. Prasad related to any pre-existing injury or impact on Dr. Prasad's testimony, the Court indicated it had already heard the same relevancy objection from JORDAN. SR, P. 11, L. 5-24. In response thereto, the Court "That I overruled your objection to." *SR,* P. 11-12, L. 25-1.

As such, the Court ruled that LEAL and TANGO were allowed to introduce deposition testimony of Dr. Prasad and Dr. Gordon related to the impact, if any, of a pre-existing injury to JORDAN, but as to the chronic nature of such injury or

16

anything related to comparative negligence, the Court sustained the relevance objection.

On November 19, 2014, immediately prior to the start of opening statements, the Trial Court heard arguments related to the depositions excerpts that she had previously allowed into evidence. While the entire discussion on these issues are not in the reporter's record, the ruling was recorded. The Trial Court ruled that "Just for the record I had clarified some things on the limine issues and the plaintiff will be allowed to bring in evidence if there is evidence of lost wages and the prior accident is not coming in or any reference to any possible – well, the references to the chronic and other, I don't know how to phrase it, the other—well, the condition that there's no evidence of I'll put it that way so, okay." CR. Volume 3, P. 11, LL. 17-24. Such ruling effectively excluded all testimony or evidence of the pre-existing injury to JORDAN, or at least the previous similar injury from 2002.

The record is clear that JORDAN provided sworn testimony that in 2002 he had been involved in a accident which resulted in physical injuries to the same physical portions made the basis of the current case against TANGO. Such sworn testimony from JORDAN meets the first prong of the factual basis showing that an alternative cause is a plausible theory for the severity of the injuries in this matter, especially since there was a time in which he did not work, and the injuries were to the same location as those made the basis of the trial in question.

17

LEAL and TANGO further sought in to include sworn deposition testimony from JORDAN'S medical experts related to the impact of the pre-existing injury from 2002 would have on their opinions related to proximate causation. However, the sweeping ruling of the Trial Court rendered such deposition excerpts excluded on the basis of relevance.

As to Dr. Prasad's excluded testimony, he testified that had he known of JORDAN'S pre-existing injury, this could have altered his opinion as to causation.

*Q. Okay. So Mr. Jordan comes in in October of 2010 and he tells you that you've had a -- that he -- that he's been involved in a wreck, correct?*

*A. Correct.*

*Q. At that time -- you referred to that as his history?*

*A. That's correct.*

*Q. Did Mr. Jordan ever refer to a previous accident he had been in?*

*A. No, he didn't.*

*Q. Okay. Did -- are you aware that he was in an accident in 2002?*

*A. No, I wasn't.*

*Q. Are you aware of any injuries that resulted from that accident?*

*A. None that he described to me.*

*Q. Okay. So those -- that MRI that was taken*

*in 2010, that's really the first photo evidence we have of what Mr. Jordan's condition is?*

*A. That's correct. When I saw him, I -- he -- specifically I wrote down that he denies any neck pain or back pain prior to the motor vehicle accident. That would mean in the last couple of years prior to the motor vehicle accident and that's what the patient says and that's all I can go by, is their history, right.*

*Q. And when -- you said earlier that you can -- can only go by what a patient says. So if the patient doesn't tell you everything --*

*A. Sure.*

*Q. -- you don't know everything?*

*A. Absolutely.*

*Q. Would that affect your opinion?*

*A. Sure.*

CR, P. 741.[2]

With regards to Dr. Gordon, the deposition testimony that was originally allowed to be offered was the following:

*Q. Would it be, then, fair to assume that on your first visit with Mr. Jordan, you were unaware that he'd been in an accident in 2002?*

[2] The deposition excerpts identified by TANGO and LEAL being from the Deposition Transcript of Dr. Prasad, P. 76-77,ll. 11-19

*A.  The accident that I was aware of was the one we've been discussing from 2010.*

*Q.  Right.  But you weren't aware that he'd been in a vehicle -- a motor vehicle accident in 2002?*

*A.  That's correct.*

*Q.  So you would have no idea whether or not he had any reoccurring back pain or leg pain from that accident?*

*A.  That's correct.*

CR, P. 741.[3]

Had the Court not changed its ruling on the date of trial, LEAL and TANGO would have been more than able to argue that this accident was not the sole proximate cause of the injuries, which was specifically included in its pleadings.

Simply put, the evidence sought to be offered by LEAL and TANGO was relevant, and would have been a sufficient factual basis showing that an alternative cause is a plausible one before evidence of that cause will be presented to the jury.

By denying LEAL and TANGO the ability to offer such evidence, the Trial Court abused its discretion because the probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative

---

[3] The deposition excerpts identified by TANGO and LEAL being from the  Deposition Transcript of Dr. Gordon, P. 50-51,ll. 24-10.

20

evidence." Tex. R. Evid. 403; *see Strauss v. Continental Airlines, Inc.,* 67 S.W.3d 428, 449 (Tex.App.–Houston [14th Dist.] 2002, no pet.).

**II. ISSUE NO. 2   Did JORDAN Open the Door related to Pre-existing Injuries during his Direct Testimony.**

As stated in the foregoing, the Trial Court's had rendered a ruling sustaining JORDAN'S objection related to relevant of the evidence, thus preventing any testimony before the jury.  It is LEAL and TANGO'S position that failure to allow relevant evidence as to the medical condition resulted in the rendition of an improper verdict.  During JORDAN'S direct testimony portion of the trial, he was asked the following question;

Question:   Okay.  Now up until October the 1st during this time that you last worked for New Waverly up until October the 1st when this wreck happened did you have any problem with your back?.
Answer:     No, sir.
Question:   From 2006 when you began working with New Waverly again up until the time this wreck happened did you have any physical problem that prohibited you from working?
Answer:     No, sir.
Question:   Do you ever remember even missing any time from work?
Answer:     No, Sir.

RR, Volume 4, P. 25-26, ll. 13-2

Later in the direct testimony, JORDAN was asked another series of questions related to his ability to provide for his family.  To be clear, the question from Counsel related to the time period of the case, being the 2010-2012 time frame.  However, as

21

shown below, the response from JORDAN incorporated his entire working history, including the 2002 time period related to the pre-exsting injury barred by the Court.

Question:    Up until this point how was it not being able to work?

Answer:    Not—not being able to work after so many years it was to the point where I've always provided for my family and I could not provide for them.   It was, wow, I don't know the right termination to use for it, but just uncertain if I was going to be able to go back and work and I….

RR, Volume 4, P. 41-42, LL. 22-4.

A party opens the door to the admission of otherwise objectionable evidence offered by the other side when it "introduces the same evidence or evidence of a similar character. *Moore v. Bank Midwest, N.A.,* 39 S.W.3d 395, 402 (Tex.App.— Houston [1st Dist.] 2001, pet. denied). Furthermore, when a party opens the door when the testimony conveys a false impression. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex.2000).  Finally, the "door is opened" to admission of evidence of collateral matters when it injects those collateral issues into lawsuit. *Bay Area Healthcare Grp., Ltd. V. McShane*, 239 S.W.3d 231, 234 (Tex.2007).

In this matter, the evidence sought to be included by TANGO was related to the preexisting injuries from 2002, and the treatment of such injuries.  JORDAN

made four statements that created a false impression to the jury, those being when he stated the following:

1.  That there had never been a time period in which JORDAN was unable to work, and
2.  That he did not remember even missing any time from work.[4]

When these statements are considered to be the whole testimony of the JORDAN, it is clear that the impression the Jury would have been provided is that JORDAN had never been without the ability to work and provide for his family. Such impression would have been clarified and/or avoided had the Trial Court allowed testimony of the 2002 accident, sustained injuries, and lost work time for a period of several months.

Following the conclusion of JORDAN'S direct testimony, LEAL and TANGO requested the Court to re-address the exclusion of the evidence related to JORDAN'S pre-existing injury. RR, Volume 4, P. 87-89. During the oral discussion, the Trial Court stated that she would have the Court Reporter look into the questionable testimony, which "is going to take forever."

After a lengthy amount of time, the Trial Court informed the parties that from her review of the testimony complained of in this brief, the door had not been opened

---

[4] Again, the series of questions included different time frames, being during his time off from New Waverly, then from 2006 to the date of the accident. The question related to missing work did not have any time period.

23

to the inclusions of the evidence related to the 2002 accident. RR, Volume 4, P. 90-91. At this point, LEAL and TANGO requested the opportunity to read into the record the deposition testimony of JORDAN that would have been offered as impeachment evidence. The Trial Court refused to allow the testimony to be read into the record, requesting instead that LEAL and TANGO include the proposed language in what later became Defendants' Trial Exhibit "21". RR, Volume 4, P. 91; see also Defendants' Trial Exhibit "D-21", RR, Volume 8, D-21.

LEAL and TANGO asserts that the door was opened by the false impression of JORDAN'S testimony, and continuously excluding such evidence resulted in an improper judgment by the Jury related to the damages in this case.

## CONCLUSION

The Trial Court admitted found the evidence in question relevant on November 10, 2014, and later rendered a ruling that such evidence was not relevant on November 19, 2014. By refusing to allow the evidence, and subsequently ruling that JORDAN had not opened the door on this issue, a false impression was made to the jury resulting in damages that would have been different had evidence been offered for the jury's deliberations. In these events, the Trial Court abused its discretion by excluding relevant evidence.

**PRAYER**

For these reasons, Appellants, DEBRA DENT LEAL A/K/A DEBBIE D. LEAL, AND TANGO TRANSPORT, INC., AND TANGO TRANSPORT, LLC., respectfully request that this Court reverse the Trial Court's excluding relevant evidence related to the 2002 accident and injuries sustained thereto, and upon such ruling, return this case to the Trial Court for a new trial. Appellants, DEBRA DENT LEAL A/K/A DEBBIE D. LEAL, AND TANGO TRANSPORT, INC., AND TANGO TRANSPORT, LLC., further respectfully request that this Court grant Appellants any and all other relief to which they may be entitled.

Respectfully submitted,

**LADD & THIGPEN, P.C.**

/s/ Matthew Thigpen
Matthew Thigpen
Texas State Bar No. 24056425
Norman R. Ladd, III.
Texas State Bar No. 24041285
223 S. Bonner Ave.
Tyler, Texas 75702
(903) 705-7211
(903) 705-7221 (FAX)

**ATTORNEYS FOR APPELLANTS**

25

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 2nd day of December, 2015, a true and correct copy of the foregoing, *Brief of Appellants*, was duly served via the following:

| Rusty Phenix<br>Phenix, Phenix and Crump<br>118 South Main St.<br>Henderson, Texas 75653<br>(903) 657-3595<br>(903) 657-3598 (FAX)<br><br>***Counsel for James Jordan*** | ☐ | Messenger |
| | ☐ | Facsimile |
| | ☐ | Certified Mail – RRR |
| | ☐ | First Class Mail |
| | ☐ | Via Overnight |
| | ☒ | Via E-Service |

 /s/ Matthew Thigpen
Matthew L. Thigpen

26

## CERTIFICATE OF COMPLIANCE

Appellants, DEBRA DENT LEAL A/K/A DEBBIE D. LEAL, AND TANGO TRANSPORT, INC., AND TANGO TRANSPORT, LLC., state that there are 5,969 words contained in Appellant's Brief.  In determining the word count, counsel for Appellants relies on the word count stated on the bottom ruler in his Microsoft Word document.

Respectfully submitted,

**LADD & THIGPEN, P.C.**

/S/ Matthew Thigpen

Matthew Thigpen
Texas State Bar No. 24056425
Norman R. Ladd, III.
Texas State Bar No. 24041285
223 S. Bonner Ave.
Tyler, Texas 75702
(903) 705-7211
(903) 705-7221 (FAX)

**ATTORNEYS FOR APPELLANTS**